Vito Barbara, Plaintiff-Counterdefendant, Appellant-Cross-Appellee, v. Carmella Barbara, Defendant-Counterplaintiff, Appellee-Cross-Appellant.

Gen. No. 52,339.

First District, Fourth Division.

May 14, 1969.

Rosenberg and Kosin, of Chicago (Errol Zavett, of counsel), for appellant.

Irving Goodman and Louis Z. Grant, of Chicago, for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

Plaintiff, Vito Barbara, brought suit against defendant, Carmella Barbara, for divorce alleging physical cruelty and the wife counterclaimed also alleging physical cruelty. The matter was adjudicated without a jury and a judgment was entered in favor of the wife on her counterclaim for divorce with an award of $60 a week permanent alimony, $1,200 for attorney's fees and an automobile; the husband was awarded custody of their four minor

children. Plaintiff appeals, but does not contest the judgment of divorce entered in favor of the wife; defendant cross-appeals.

The husband complains that the trial court erred in awarding the automobile (1963 Cadillac) to the wife; the allowance of attorney's fees of $1,200 was error or that in the alternative it was excessive; and that the award of $60 a week alimony is excessive.

The wife contends that the allowance of alimony was insufficient and should be increased to $150 a week and that the trial court erred in granting custody of their four minor children to the husband.

The parties were married on November 26, 1950, and at the time of trial the sex and age of their four minor children were as follows: the daughters were 14 and 13 years of age, the sons were 10½ and 8 years of age.

By stipulation, a psychiatric examination was conducted of the parties and their four children.

EVIDENCE

Testimony of the Psychiatrist, on behalf of plaintiff:

He testified extensively regarding his examination and evaluation of the parties and their children. The husband displayed a high degree of dependency, but there was no evidence of psychosis or psychoneurosis and he was diagnosed as having a passive-aggressive type of personality disorder. The wife had a history of two episodes of psychiatric hospitalization and the symptoms clearly indicated some disorder of a paranoid variety. At the time of the examination there was no evidence of outright psychosis, but the mechanism of projection was overwhelmingly evident. The witness diagnosed the wife as a paranoid personality with a future paranoid break quite likely and presently she appeared to be quite disturbed emotionally. He found the children reacting negatively to the pressures of their mother's illness and if this condition continued the children could be pushed into

actual clinical disturbances. In his opinion, the husband is the proper parent for the custody of the children and if the children were awarded to the wife it would be detrimental to her and the children. All the children displayed varying degrees of emotional turmoil and anxiety.

Testimony of Carmella Barbara, wife, called by plaintiff under section 60:

She is forty-six years of age and always took good care of her family. She struck the children only in an endeavor to discipline them. When the children visit her (the husband was awarded temporary custody) they do not really communicate with her and she feels they are angry with her and she cannot understand their attitude. When they see her on the street they ignore and pass her up and she does not want to force them to speak to her. Her husband never furnished her with any money but he paid for everything. She was last employed thirteen years ago. She has no assets or insurance and is solely dependent upon her husband for support. She was a patient at Michael Reese Hospital for four weeks in the psychiatric department and six weeks as a patient at the Illinois State Psychiatric Institute.

Testimony of Mary Rose Barbara, on behalf of plaintiff:

She testified she is fourteen years of age and the eldest daughter of the parties and recounted the difficulties and vicissitudes visited upon her and her siblings by her mother. She emphatically expressed her wish to remain in the custody of her father.

Testimony of Vito Barbara, husband testified:

On August 15, 1966, he took the parties' four children and moved into his sister's ten room apartment and has lived there with them since that date.

He is a mechanic, body man and truck driver, with a net take home pay averaging $125.00 a week. On direct examination he related he had owned his own trucking

firm but he has not "worked them (his trucks)" since 1962, and he went out of business in June, 1966. He had 16 trucks and very few workable, and they are now "lying in" a lot.

In 1965 he earned $1,700 to $1,800, but in 1966 he had a loss of $2,500 in income.

When he lived with his wife he did all the shopping and in addition paid all other bills and furnished her with $100 a week.

The children are regular church members and attend the parochial school. His place of employment is next door to his residence.

Sam Pessin, testified for plaintiff:

He was auditor for husband and did the parties' income tax returns for the previous 15 years and was a family friend. In 1964 the husband reported a gross income from his truck leasing business in the amount of $33,504.45, a net business income of $4,967.30 and a taxable income of $6,572. In 1965 the gross receipts were $22,477.58, a net business income of $1,692.83 and $95 interest from two bank accounts. In 1966 he ascertained a net business loss of $2,611, part of this loss represents depreciation. All of the returns were prepared from whatever receipts and invoices were furnished by the husband. The witness testified further the husband never really went out of business, he discontinued operations in June of 1966. In 1964 the husband took a $20,000 depreciation on the trucks and this actually represented a cash flow to him by decreasing his income. Although the trucks are old they are still carried on the books as an asset.

OTHER EVIDENCE

There was protracted testimony by the parties and other witnesses which portrayed the trivia and deportment of people caught up in a maelstrom of domestic disharmony and discord whose recitation lends nothing to the resolution of the issues before this court.

It was stipulated that the court could interview the children in chambers. The court interviewed each child out of the presence of each other and then advised the parties and counsel that all four children expressed a preference and desire to remain in the custody of their father. The court stated that it considered the interviews in arriving at its conclusion regarding the question of their custody.

OPINION

Plaintiff contends the trial court erred in awarding the automobile to defendant because it was beyond the power of the court or, at least, an abuse of discretion. The husband argues, without citing any authority, that there can be no gift without delivery of the keys and certificate of title to a motor vehicle. The wife in her counterclaim for divorce alleged the parties acquired certain household furniture and a Cadillac automobile, title thereto in the wife and possession in the husband. The husband's answer merely admitted that the parties had acquired certain furniture and an automobile. The husband thereby admitted title to the vehicle to be in the wife. Ill Rev Stats, c 110, § 40 (1965).

The court made a finding in the judgment of divorce that the vehicle was titled in the wife and ordered the husband to deliver her possession of it as her sole and exclusive property. In Peck v. Peck, 16 Ill2d 268, 157 NE2d 249 (1959) the court said at page 283:

> "Where a wife is given title to property purchased in whole or in part from a husband's funds, there is a presumption of a gift from the husband to the wife, (Stevens v. Stevens, 14 Ill2d 99; Pollard v. Pollard, 12 Ill2d 441,) and the circumstance that the husband paid the purchase price does not, in the absence of anything more, make him the equitable owner of her interest. (Lutticke v. Lutticke, 406 Ill 181.) Property voluntarily conveyed by a hus-

194

band to his wife, without fraud or coercion, becomes the wife's separate property and, notwithstanding the husband purchased the property with his own money, the wife may hold the property against him. (McComb v. McComb, 241 Ill 453.)"

█ The record more than adequately establishes that the funds for the purchase of the vehicle were furnished by the husband, but that title was in the wife and since there was no evidence to overcome the presumption of a gift, the wife holds the property as against the husband.

The husband alleges that he is financially unable to pay his wife's attorney's fees for services in the trial court and thus he should be relieved of this burden. He also claims the fee is excessive.

The following cases are submitted in support of his contention regarding attorney's fees: Hopkins v. Hopkins, 399 Ill 160, 77 NE2d 43 (1948); Young v. Young, 323 Ill 608, 154 NE 405 (1926); and Klekamp v. Klekamp, 275 Ill 98, 113 NE 852 (1916).

In Hopkins the wife had worked continuously and contributed to the family income for many years and at the time litigation was commenced, the husband's earnings were negligible and he had contracted a disease that left him in an increasingly poor physical condition. On appeal the court found it equitable not to have allowed attorney's fees to the wife and cited the Young and Klekamp cases, supra, for the proposition that it is error to allow attorney's fees to the wife when she has a greater ability to pay than her husband. The same rule was applied in Jones v. Jones, 48 Ill App2d 232, 198 NE2d 195 (1964).

In the instant case it was abundantly clear the wife had no income or estate.

Ill Rev Stats, c 40, § 16 (1965), provides that attorney's fees may be ordered to be paid when it is "just and

equitable." In Canady v. Canady, 30 Ill2d 440, 446, 197 NE2d 42 (1964) the court said:

> "The allowance of attorney's fees in a divorce proceeding 'rests in the sound discretion of the trial court, and unless such discretion is clearly abused, its exercise will not be interfered with.' (Ylonen v. Ylonen, 2 Ill2d 111, 121.)"

■ The court was apprised of the financial condition, circumstances of the parties and the legal services furnished. The wife was compelled to defend against the husband's complaint, maintain her suit and pursue and defend on motions regarding temporary alimony, attorney's fees, custody and visitation provisions. The husband never abandoned his complaint but pressed it throughout and necessitated preparation for trial and the resulting contest which ensued between the parties. We find no abuse of discretion in amount and award of attorney's fees granted to the wife.

The husband contends an award of $60 a week alimony is excessive.

In Byerly v. Byerly, 363 Ill 517, 2 NE2d 898 (1936), the court said at page 525:

> "There is no hard and fast rule for the fixing of alimony. Matters which are usually considered by the court in determining alimony are the ages of the parties, their condition of health, the property and income of the husband, separate property and income, if any, of the wife, the station in life of the parties as they have heretofore lived, and whether or not there are any children dependent upon either for support, and also the nature of misconduct of the husband."

We also have recourse to the statute in the determination of the propriety of the amount of alimony awarded

to a party. Ill Rev Stats, c 40, § 19 (1965). Section 19 provides in part ". . . the court may make such order touching the alimony and maintenance of the wife or husband . . . as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just."

The husband concedes that our Supreme Court has accepted half of the man's income as the upper limit as alimony. Wilson v. Wilson, 102 Ill 297 (1882). The factors and matters related in Byerly as to the determination of the amount were all extensively and thoroughly developed at the trial. A few months prior to leaving his wife, the husband discontinued his truck leasing business, as related by his auditor, Mr. Pessin. The vehicles were placed in repose in a vacant lot leased from the husband's brother. The trial court we assume took into consideration the existence of these assets in determining the financial circumstance of the husband, along with the wife's mental health and her inability to support herself.

█ The wife contends that the award of $60 a week alimony was insufficient. As we have already stated the factors and matters relative to the determination of the amount of alimony were all extensively and thoroughly developed at the trial and we can neither find abuse of discretion in the award of alimony nor justification to award the wife a greater amount than she was allowed by the trial court.

The wife argues that the court erred in awarding custody of the children to the husband.

In reviewing an award of custody of minor children we are governed by the rule in Miezio v. Miezio, 6 Ill2d 469, 129 NE2d 20 (1955), stated at 472:

> "In awarding custody of minor children to one parent or the other, the paramount consideration must necessarily be the welfare and best interest of the children. (Nye v. Nye, 411 Ill 408; Buehler v.

197

Buehler, 373 Ill 626.) Although the discretion of the trial court in matters relating to the custody and support of minor children is a judicial one and subject to review, (Nye v. Nye, 411 Ill 408) the determination should not be disturbed upon appeal unless manifest injustice has been done. (Buehler v. Buehler, 373 Ill 626.)"

The wife relies primarily upon Nye v. Nye, 411 Ill 408, 105 NE2d 300 (1952), and contends that only when the most compelling evidence is presented, proving the mother to be an unfit person, should custody of her minor children be denied her. The Nye case was commented upon in words applicable to the instant case in Jenkins v. Jenkins, 81 Ill App2d 67, 225 NE2d 698 (1967), at page 73:

"The decision in Nye is not compelling as authority for petitioner's argument here, since, as can be seen from recital of the issues involved, that decision, and the many in which it has been followed, did not declare as an immutable rule of law that a child should be awarded to its mother in every case in which she is found to be a fit parent. It held only that it is 'usual' in such cases, but that '[t]he guiding star is and must be, at all times, the best interest of the child' . . . ."

Similar language is found in Carlson v. Carlson, 80 Ill App2d 251, 255, 225 NE2d 130 (1967), the court said:

We do not find any authority to support the contention that in Illinois there is an arbitrary rule that unless there is evidence that a mother is unfit, she should have the custody of young children. The Supreme Court, also in Nye, stated that under our divorce statute the court is clothed with large discretion in determining to which parent a child will be

198

given, and then indicated that the primary concern of the courts in cases like this, ". . . is and must be, at all times the best interest of the child."

The uncontradicted evidence related by the psychiatrist who by agreement of the parties examined and evaluated the parties and their children, established it would be detrimental and deleterious to the children's best interest to have their custody awarded to the wife. He testified that he saw no reason to remove them from their father's environment which was a positive relationship without any evidence of psychological damage to the children. In addition, he found it would be better for the wife's welfare not to have custody because she would have difficulty and would develop stress.

█ The court by agreement of the parties privately interviewed the children and their preference for living with the father was strongly manifested to the court. This practice was condoned in Oakes v. Oakes, 45 Ill App 2d 387, 195 NE2d 840 (1964). We are mindful that while the minor child's preference is not controlling, [Stickler v. Stickler, 57 Ill App2d 286, 289–291, 206 NE2d 720 (1965)], it is a proper factor, however, to be considered by the court in the determination of custody.

It is noted that the husband had actual custody of the children since August 1966 and in September 1966 he was granted temporary custody by a judge other than the one that presided over the trial.

██ The court also made a specific finding in the judgment of divorce that the husband was a fit and proper person to have the care and custody of the children. We find the trial court's decision awarding custody of the children to be supported by the record. In the absence of clear and convincing evidence that manifest injustice has been done, or that the trial court has abused its discretion, reviewing courts should not reject

the findings and decisions of the trial courts in cases of this character because in so doing we would merely be substituting our own personal judgments for those reached from a far better vantage point. Jenkins v. Jenkins, supra.

Judgment affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.