ELOISE WILNER, Plaintiff-Appellant, *v.* WARREN WILNER
Defendant-Appellee.

(No. 70-167;

Third District—February 17, 1971.

Cuba, Russell & Bridewell, of Chicago, (George K. Meuth, of counsel,) for appellant.

Crissey, Kost & Downs, of Lewistown, and Sebo & Bath, of Canton, (Oral C. Kost, of counsel,) for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This cause was appealed to the Supreme Court of this State but was transferred to this Court for jurisdictional reasons.

Plaintiff-appellant, Eloise Wilner, filed an action in the Circuit Court of Fulton County, Illinois, to enforce the provision of a California divorce decree which awarded custody of two minor children to said Eloise Wilner. Appellee Warren Wilner, the husband, sought to have the Circuit Court of Fulton County modify the decree of the California court. Cross-petitions were filed and the cause was heard in the Fulton County Circuit Court. As a result of such proceedings the trial court modified the California divorce decree and awarded custody of the two minor children to defendant Warren Wilner with provisions for visitation by the mother of the children.

The record in this cause discloses that defendant Warren Wilner is a doctor of medicine who has specialized in anesthesia since 1945. In 1942 the parties to this cause were married in Chicago. Following the marriage, one child was born in 1949, and, thereafter, two children were adopted; one being Heidi Wilner (born October 18, 1957) and the other being Scott Wilner (born July 26, 1960). The parties to the action resided in Burlingame, California, but they separated on January 18, 1964. An Interlocutory Degree for Divorce was entered on April 17, 1964, with a final decree being entered on April 19, 1965. The final decree approved the Interlocutory Decree which also approved a Marital Settlement Agreement

between the parties dated March 7, 1964. The custody of all three children was awarded to the wife subject to reasonable visitation by the husband. The husband was to pay for the support of the children in the amount of $225 per month per child and alimony of $425 per month to plaintiff Eloise Wilner. Four days following the entry of the decree of divorce in California, Dr. Wilner, married Jackie Wilner, and the defendant and his new wife continued to live in the home formerly occupied by plaintiff and defendant. Plaintiff and the three children moved into a rented home in Burlingame, California, shortly after the Interlocutory Divorce Decree was entered.

Following the entry of the Interlocutory Decree in April of 1964, defendant had the children with him nearly every weekend for Saturday and Sunday and sometimes for Friday through Sunday. During the first summer defendant had the children for two weeks and during the second summer for three weeks, and during the third summer he had them for three weeks and an additional week when plaintiff went to a church conference. From the time of the divorce until August 1966, defendant had the children nearly every weekend except one or two times a year when they were on a trip with their mother.

Early in the summer of 1966, plaintiff told defendant she would like to take the children on a trip to Virginia. Defendant suggested that the trip would be good for plaintiff but not for the children. Plaintiff took the children east on about August 15, 1966, on what the children understood was to be a "vacation trip". Defendant was still living in Burlingame and working at Peninsula Hospital although he had resigned his position for about two weeks during 1965 when he was considering taking a job in Milwaukee, Wisconsin. When plaintiff was returning from the east coast by automobile with the children, plaintiff reached the Pennsylvania Turnpike and changed her mind and went back to Arlington, Virginia, where she obtained an apartment and enrolled the children in school for the 1966-67 school year. Plaintiff testified that her older daughter, Wendy, wished to return to Arlington because she had met a boy and, also, that plaintiff had met a gentleman friend in Virginia. Plaintiff also testified that before she took the trip east she talked with a psychiatrist, previously consulted by plaintiff and defendant prior to the divorce, to ascertain how the psychiatrist felt a move to the east would be for the children. The psychiatrist said it would probably be harder on Heidi but it might do all of them some good. Plaintiff considered the move east as a permanent move. Defendant was informed of the move by telegram and letter and there were also telephone calls from the children.

Plaintiff testified she thought there were advantages to living in the Washington, D.C., area such as the fact that there were people from

foreign service who lived in the apartment building. During the 1966-67 school year, Heidi requested that the family be returned to California, while Scott appeared to have remained indifferent.

It was shown that plaintiff worked part-time in Virginia and appeared to have been busy with a number of outside activities, even though the plaintiff stated she was with the children a part of every evening during the school year. Heidi told the judge that her mother was gone most of the time and that her older sister, Wendy, stayed with them. During this period, Scott was watching television about two and a half hours a day. There was some evidence that the two younger children, Heidi and Scott, were having school problems in Arlington. Mr. Lindsey Harmon, a friend of the plaintiff from Arlington, Virginia, testified that he visited in the plaintiff's home in Arlington during 1966-67 and even stayed with the children a week when plaintiff was gone. He testified that he watched the children play and that he and Scott are good friends and get along fine but that Heidi is a little "offish". Mr. Harmon was divorced in 1968 and stated that he and the plaintiff hoped to get married in the summer of 1969 (being the summer following the hearing in Illinois).

Defendant saw the children for about three days around Christmas in 1966 when the children flew into Chicago and met defendant's parents and defendant. In February 1967 defendant filed a petition in California to modify the California decree but this petition was never brought to a hearing. In April 1967, defendant sold his house in Burlingame, California, at a loss and moved to Fulton County, Illinois, where he has resided ever since. He testified that several things motivated his move from California, one being the fact that the children were not in California but in Virginia. Defendant stated that he was also dissatisfied with living conditions in California including air pollution, the dope problem with school children and general crowded conditions. He stated he wished to move to a place where there was clean fresh air and people had good basic values in life.

In the summer of 1967 plaintiff took the children back to California for a short time and the three children then returned to Illinois around the middle of August to visit their father. Normally, he was to return the children to their mother in Chicago on August 31, 1967, but on this date, only Wendy was returned, as defendant had enrolled Heidi and Scott in the school in Cuba, Illinois, for the 1967-68 school year.

Plaintiff thereafter filed a complaint in Illinois on September 5, 1967, to have the California decree enforced and the two children returned. Defendant answered stating that plaintiff had removed the children to Virginia and now the children wished to live with him and it was to their best interests. After a September 20, 1967, hearing, an order was entered on stipulation of the parties which provided that Heidi would remain

with defendant through the 1967-68 school year and Scott would remain with defendant through the first semester of the school year and then return to his mother in Virginia. The cause was then continued.

In August 1968, defendant filed a petition to modify the California decree to allow him to have Scott with him stating that Scott had become overweight, lethargic and unmanageable while with his mother the first half of 1968 and alleged further that it was to the best interest of Scott that he be with his father in Fulton County. Plaintiff then filed a counter-petition requesting again that the California decree, which gave her custody of both children, be enforced. All of the various motions and petitions were consolidated into one hearing which was held before the judge in February and later in April 1969. On July 7, 1969, the trial court entered an order which found that the California decree was afforded full faith and credit but that there had been a material change in the circumstances of the parties and the children since the entry of such decree. The court found specifically that it was to the best interests of the two younger children that they be placed with their father, and that they visit their mother the last six weeks in the summer and spend one half of their Christmas vacation with their mother.

At the 1969 hearing in Fulton County, other pertinent facts which were shown disclosed that school records indicated that the children were doing better in school in Illinois than they had been in Arlington, that the children seemed well adjusted and got good grades. The trial judge also held two conferences alone in his chambers with the children, the first conference being with all three children, and the second with just Heidi and Scott. A record was kept of the discussion between the judge and the children. Scott told the judge he didn't have many friends in Arlington, but he did in Illinois and expressed a liking for both of his parents but particularly liked his father because he was a man and they did things together. He said his father was strict and made him mind. He also stated he would like to visit his mother. Heidi stated that she realized the judge had to decide whether she would live with her father or mother, and she stated that she would rather stay in Illinois as she had more friends there and, also, that her father made her mind. At the request of the plaintiff later in April, the judge again talked with the children, just after they had returned from a visit with their mother. The judge asked both Heidi and Scott if their father told them anything to say to the judge. Both children told him that their father merely told them the night before they were to talk to the judge to write down for themselves the reasons why they wanted to stay in Illinois. They said their father gave them no help in this but they showed him the list. This list was not brought to the court proceedings. Both children showed an

understanding of the court proceedings and expressed an affection for both parents, but expressed a preference to stay in Illinois with their father.

It was also shown that defendant had a four bedroom house on a lake in an area that afforded adequate room for the children to play and that he had arranged a schedule which allowed time for study and household chores, reading, playing, television, and family activities. Even the weekends were planned with most of the activity being family centered. Defendant and his second wife, Jackie, have a girl of their own and evidence showed that Heidi and Scott got along fine with this child. Heidi and Scott were questioned about the strict time schedule but stated they both liked it. There was evidence that when Scott returned from Arlington in July 1968, after being with the plaintiff since January 1968, he was self-centered, loud talking and ill mannered, and was overweight and lazy. After four months in Fulton County, he improved, lost weight and became quite active.

Evidence also disclosed that plaintiff had four and one half years of psychoanalysis while married to the defendant in California and that this treatment ended in 1957. Plaintiff testified, however, that since 1967 she has been under the care of a psychiatrist and she presently sees a psychiatrist about once a week. Plaintiff admitted that at times she had "thoughts of suicide" and on several occasions she mentioned this to the children. During the hearing the trial judge asked plaintiff about her religious affiliation. Plaintiff stated that she was a Unitarian and the trial judge inquired in a general way about the beliefs of such religion.

■■■ The question before this Court is whether the trial court erred in modifying the California divorce decree to grant defendant custody of Heidi and Scott Wilner. Fundamentally, it is notable that full faith and credit should be given to the California divorce decree. (*Halvey v. Halvey,* 330 U.S. 610; *People v. Potter,* 2 Ill.App.2d 419.) In matters involving divorce decrees of other states, however, where new circumstances have arisen since the divorce decree, the courts in the State of Illinois are not prevented from re-examining custody questions even with full faith and credit to the original divorce decree. *Faris v. Faris,* 35 Ill.2d 305. There must, however, be a change in circumstances since the entry of the decree in the foreign state. As stated in *Faris v. Faris, supra,* even though full faith and credit is given to the foreign decree, where circumstances have arisen since the entry of the decree, the custody issue can be reconsidered by the Illinois courts, with the best interests of the children as the prime consideration.

This, therefore, brings us to the question of whether the trial judge abused his discretion in determining that there had been a change of circumstances in the cause before us since the entry of the California

divorce decree, and whether such change of circumstances justifies modification of the custody provisions of the decree. On a review of the record, we believe that sufficient evidence was presented from which the trial court could reasonably have concluded that there was a change in circumstances since the entry of the California decree. There was a change in residence of both parties with plaintiff moving to Virginia and defendant to Fulton County. At the time of the entry of the decree, both parties lived in the same jurisdiction and were in close proximity to the children. The residences of the mother and father are now separated by many miles. It is not material to the case to determine which party was first to move from California, but it is significant that both parties have changed their residence and moved from California. In addition to the change in residence, defendant has remarried. There was evidence of a possible change in plaintiff's mental condition since the entry of the decree. There was also evidence that the children's school work was suffering in Virginia, and has improved in Illinois.

■■■ It is true that Illinois courts have not defined exactly what constitutes a change in circumstances so as to justify a modification of a decree. In *Nye v. Nye*, 411 Ill. 408, the court indicated that a decree is *res adjudicata* as to facts which existed at the time it was entered, but not as to facts arising thereafter, and it is true that changes in circumstances or facts arising after the decree must be shown to have affected the welfare of the children. *Faris v. Faris, supra; Hirth v. Hirth*, 59 Ill.App.2d 240.

■■ During the hearing, plaintiff attempted on several occasions to introduce testimony concerning events leading up to the California divorce including defendant's relationship with Jackie, his present wife. The trial court refused to allow such testimony, since matters which preceded the entry of the California decree were not appropriate for consideration. Plaintiff was, however, allowed to testify that she had received mental treatments while married to the defendant and up until 1957 so that the question of whether her recent visits to a psychiatrist involved a change in condition was properly presented. On the basis of the record, therefore, it appears that there was a sufficient change in circumstances to warrant the trial judge in re-examining the custody question.

The next question which arises is whether the trial judge abused his discretion in determing that the best interests of the two children would be achieved by placing custody with the father, with a six week summer and one week Christmas vacation period with the mother. Both parties to this action agree that the test to be applied in a custody matter of the character before us is to determine what is in the best interest of the children involved. (*Nye v. Nye*, 411 Ill. 408). This rule is particularly significant where both parties are fit parents as in the instant case in the sense that they

can provide physical necessities and also the proper atmosphere in which to raise children. While it is difficult to pinpoint any one factor or particular combination of factors, a reading of the record and the facts including those to which we have referred shows a fundamental concern for the children on the part of the father which is understood and appreciated by the children. The father very seldom missed a weekend of visitation from the time the original divorce decree was entered and the only ones he did miss were because the children were out of town. He had the children with him during the summer vacations and even kept them an extra week when plaintiff was going to be gone. The evidence also shows that defendant placed great emphasis on family living and family activities, and that, while he was a strict disciplinarian, the children like such discipline. While it is true that the plantiff's love for the children was quite manifest, the children were permitted to do pretty much as they pleased and Heidi told the trial court in an interview that her mother was gone a great deal.

■■ These factors considered singly, would not justify a change of custody, but all of the various circumstances, coupled with the preference expressed by the children themselves, were aparently strong motivating factors to the court in determining what was in the best interest of the children. It is true that the preferences of children alone, when the children are under 14 years of age, should not warrant a change in custody. In considering all of the various factors present in the cause, however, we cannot say that there was an abuse of discretion by the trial judge in ordering the change in custody. Unless there is clear and convincing evidence that manifest injustice has been done or that the trial court is abusing its discretion, a court of review should not reject the findings and decision of the trial court, and substitute its personal judgment for those reached from the far better vantage point of the trial court. *Barbara v. Barbara*, 110 Ill.App.2d 189. The trial court saw and observed the parties and consulted with the children involved. On the basis of the record we cannot say that there was clear and convincing evidence that manifest injustice had been done in changing the custody.

One other point was raised which we do not believe is significant. It is contended that the trial judge erred in questioning plaintiff about her religious affiliation. Plaintiff indicated that she was a member of the Unitarian Church. She contends that this questioning violated the federal constitution as to separation of church and state. As we read the record, the trial judge in the instant case merely made an inquiry, and nowhere in his opinion at the close of the case or in any action involved in the trial of this cause does it appear that his decision was in any manner

influenced or determined upon any question of religion. We note that no objection was made to this line of questioning.

Since we do not find any clear and convincing evidence that manifest injustice has been done or that the trial court abused its discretion, we do not believe we would be justified in reversing the decree of the trial court in this cause. The decree of the Circuit Court of Fulton County is, therefore, affirmed.

Decree affirmed.

STOUDER and McNEAL, JJ., concur.