ROSEMARY MATTOX VOLLMER, Respondent-Appellant, v. GARY MAT-
TOX, Petitioner-Appellee.

Fifth District   No. 5—84—0371

Opinion filed August 13, 1985.

Victoria J. Ehret, of Belleville, for appellant.

Clyde L. Kuehn, of Kuehn & Rhein, of Belleville, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Respondent, Rosemary Mattox Vollmer, appeals from an order of the circuit court of St. Clair County which modified a prior custody judgment entered by it in a divorce proceeding between the parties. In the order appealed from, the court transferred custody of the couple's natural son, Jason Mattox, to petitioner but allowed respondent to retain custody of the couple's adopted son, Phillip Mattox.

On appeal, respondent contends that: (1) the circuit court's ruling was against the manifest weight of the evidence; and (2) the circuit court erred by failing to make specific findings as required by subsection 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 610(b)). We conclude that respondent correctly asserts that the court did not comply with the requirements of section 610(b); therefore, we do not consider respondent's first assignment of error.

Petitioner and respondent were married on October 24, 1970, and divorced on April 4, 1977. Custody of the couple's two children was awarded to respondent and petitioner was given visitation rights. In the years following the divorce, petitioner sought modification of custody a number of times; and in 1980, he abducted Jason and took him to Oregon.

On January 19, 1982, petitioner again sought modification of the custody provisions; and a hearing was held on December 30, 1982. At that hearing the circuit court, after noting that respondent has used marijuana, stated:

> "Quite frankly, I was enormously distressed with the image that Rosemary Vollmer presented to this Court yesterday. She seemed to typify the laid back confident female member of the 'me-first' generation which I find despicable. Of course, Mr. Mattox's behavior was more despicable in the middle and late 70's. And it is truly remarkable that this man has been able to make that transition from a worthless human being to someone who is obviously dedicated to accomplishing something in his life. Unfortunately, all of us don't reach the same spot at the same time. And it's to Mrs. Vollmer's disadvantage that she has been most recently despicable."

In this regard, evidence was introduced at the hearing which indicated that respondent used marijuana and avoided her creditors.

On October 3, 1983, another hearing concerning modification of custody was held. At this hearing the adopted son, Phillip Mattox, who was 14 years of age, told the court that he preferred to live with his mother and that petitioner seemed to favor his natural son, Jason. Jason Mattox, who was 12 years of age, stated that he would prefer to live with his father.

Petitioner testified that his current wife, Angela Mattox, preferred that Phillip not live with them. Respondent testified that she lived in Florida with her current husband, Ron Vollmer, and that Mr. Vollmer treated Jason like a son. Mr. Vollmer stated on cross-examination that he had filed bankruptcy and that he drank alcohol occasionally and had used marijuana in the past but had stopped using it. Angela Mattox said that she did not want petitioner to obtain custody of Phillip.

On October 4, 1983, the circuit court entered the following decision:

> "With regard to the minor child, Jason, the Court is somewhat surprised that Jason prefers to live in Illinois with his father and step-mother because he has lived most of his life with his mother, with his brother, and with his younger sisters. It occurs

to the Court that this young boy is courageous and that most people in life, including adults, accept the status quo because it takes less effort. There are fewer problems normally with staying where one is rather than risking the unknown.

This Court is convinced from the evidence it is to the best interest of Jason that he live with his father and his step-mother in the State of Illinois and his custody is awarded to his father. Obviously, this change will be traumatic to the mother, to the siblings, to Jason. The Court would encourage visitation rights with his mother whenever possible. At such times as the mother is in the state, she may visit with Jason at all reasonable times. Visitation rights to Jason are awarded for the month of August of each year until the commencement of school and for the first one half of the Christmas vacation and for all of the Easter vacation or spring vacation if there is one. The parents will share equally the transpertation [sic] costs for Christmas and Easter."

The written decree of modification which the court subsequently filed did not elaborate upon the reasons for the court's decision to change the custody of Jason.

We agree with respondent's assertion that subsection 610(b) of the Illinois Marriage and Dissolution of Marriage Act requires the circuit court to make specific findings to support a modification of custody. This subsection as originally enacted has undergone an amendment by which certain requirements regarding proceedings to modify custody were eliminated (Ill. Ann. Stat., ch. 40, par. 610(b), Supplement to Historical and Practice Notes, at 42-43 (Smith-Hurd 1985 Supp.)). However, the Historical and Practice Notes for this subsection state:

"Subsection (b) requires the court to make specific findings in order to modify a prior custody judgment. See Historical and Practice Note to sec. 610 in the permanent volume, and cases cited, pp. 93-97; In re Marriage of Sweet, 104 Ill. App. 3d 738, 432 N.E.2d 1098, 60 Ill. Dec. 199 (1st Dist. 1982); In re the Marriage of Godwin, 104 Ill. App. 3d 790, 433 N.E.2d 310, 60 Ill. Dec. 513 (3d Dist. 1982). Although these cases were decided before the amendment, there is no reason to think that the requirement no longer exists." (Ill. Ann. Stat., ch. 40, par. 610(b), Supplement to Historical and Practice Notes, at 43 (Smith-Hurd 1985 Supp.).)

Although our review of *In re Marriage of Sweet* and *In re Marriage of Godwin* leads us to conclude that neither case stands for the proposition that section 610(b), before it was amended, required that specific findings must be made by the trial court, ample authority is found for

the enforcement of such a requirement in *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499, *Applegate v. Applegate* (1980), 80 Ill. App. 3d 81, 399 N.E.2d 330, and *In re Marriage of Baltierra* (1980), 87 Ill. App. 3d 592, 409 N.E.2d 378. Our supreme court in *Harne* observed that section 610(b) of the Illinois Marriage and Dissolution of Marriage Act, like section 409(b) of the Uniform Marriage and Divorce Act, reflects an underlying policy favoring the finality of child-custody judgments and of making their modification more difficult. In this regard, the court in *Harne*, quoting with approval the commissioners' note to section 409 of the Uniform Marriage and Divorce Act, stated in part:

> " 'Most experts who have spoken to the problems of post-divorce adjustment of children believe that insuring the decree's finality is more important than determining which parent should be the custodian. [Citation.] This section is designed to maximize finality (and thus assure continuity for the child) without jeopardizing the child's interest.
>
> \* \* \*
>
> Subsection (b) in effect asserts a presumption that the present custodian is entitled to continue as the child's custodian. \*\*\*' " (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 420, 396 N.E.2d 499, 501-02.)

The court in *Harne* further remarked that absent a judicial finding of the existence of the statutory prerequisites of section 610(b), a court of review would be unable to determine the basis for the modification order and would be left to speculate on the grounds relied upon by the trial judge.

■ The same rationale would apply today after the amendment of section 610(b). Therefore, we conclude that the trial court is still required to make explicit findings in support of any modification of custody under the provisions of section 610(b) of the Illinois Marriage and Dissolution of Marriage Act.

■ We conclude that the level of specificity required by subsection 610(b) was not met in the case at bar. Subsection 610(b) prohibits a modification of custody unless the trial court finds by clear and convincing evidence that both: (1) a change of circumstances has occurred, and (2) modification of the prior custody order is necessary to serve the best interests of the child. In the instant case the circuit court specifically found that it would be in Jason's best interest to live with his father but failed to find any change of circumstances, which is required to overcome the legislative presumption in favor of respondent who was the present custodial parent. (See *In re Custody of Harne* (1979),

77 Ill. 2d 414, 421, 396 N.E.2d 499, 502, in which it was stated that this presumption was created to promote stability and continuity in the child's custodial and environmental relationships; and *In re Custody of Dykhuis* (1985), 131 Ill. App. 3d 371, 373, 475 N.E.2d 1107, 1109.) While petitioner suggests that a change of circumstances was established by the exhibits indicating financial difficulties and marijuana use by respondent, the record does not indicate that the circuit court relied on this evidence when it entered the custody modification judgment.

Petitioner further relies upon the statements made by the trial court on January 19, 1982, to support the specificity requirement of subsection 610(b). We find that petitioner's reliance on the court's statements at the January 19, 1982, hearing is misplaced. The court did nothing to modify custody on January 19, 1982, and its suggestion at that time that respondent was a "confident female member of the 'me-first' generation" is irrelevant for purposes of determining whether the court made specific findings in October 1984 when it ordered a change of custody. The record before us does not indicate what, if any, change of circumstances the circuit court found to have taken place. Therefore, we conclude that the case at bar must be remanded to the trial court for further proceedings in order for the court to make explicit findings supporting a change in the custody of Jason Mattox. See *In re Marriage of Sweet* (1982), 104 Ill. App. 3d 738, 744, 432 N.E.2d 1098, 1103; *In re Marriage of Godwin* (1982), 104 Ill. App. 3d 790, 794, 433 N.E.2d 310, 313.

In conformity with the rationale of the court in *Harne* with regard to the inadvisability of interrupting the current environment of children of parties to marriage dissolution proceedings (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21, 396 N.E.2d 499, 501-02), we order that the temporary custody of Jason Mattox shall remain with his father, Gary Mattox, while the temporary custody of Phillip Mattox shall remain with his mother, Rosemary Mattox Vollmer, until the trial court makes a final determination as to permanent custody (see *In re Marriage of Godwin* (1982), 104 Ill. App. 3d 790, 794, 433 N.E.2d 310, 313) in conformity with this opinion.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is vacated in part and the cause remanded with directions.

Vacated in part and remanded with directions.

JONES, P.J., and WELCH, J., concur.