*In re* MARRIAGE OF MELANIE G. GARRETT ZUCCO, Petitioner-Appellant, and REED A. GARRETT, Respondent-Appellee.

Fifth District No. 5—85—0824

Opinion filed December 1, 1986.

148

KASSERMAN, P.J., specially concurring.

Larry D. Gibson, of Mt. Vernon, for appellant.

Scott Wilzbach, of Wilzbach, Hillis & Elliott, of Salem, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Petitioner, Melanie Garrett Zucco, appeals from an order of the circuit court of Marion County modifying the joint-custody provisions of a judgment previously entered by the court in a marriage dissolution proceeding between the parties. In its order, the circuit court refused to terminate joint custody, but awarded primary physical custody of the parties' minor son, Shawn Garrett, to respondent, Reed Garrett, subject to petitioner's rights of visitation. On appeal, petitioner contends: (1) that the circuit court's order does not comport with the requirements of section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 610(b)) because it does not contain specific findings of fact to show a change in circumstances which would warrant modification of the prior joint-custody arrangement; (2) that the court erred in relying on statements made by the child in a home study report prepared by the Department of Children and Family Services concerning his preference for custody; (3) that the court's consideration of religious beliefs as a

factor in its decision violated the establishment clause of the first amendment to the United States Constitution (U.S. Const., amend. I) and article I, section 3, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 3); and (4) that the court's decision constituted an abuse of discretion and was contrary to the manifest weight of the evidence. For the reasons which follow, we reverse and remand.

Petitioner and respondent were married on January 5, 1976. They had one child, Shawn, who was born November 1, 1978. The parties' marriage was dissolved by a judgment of dissolution of marriage entered by the circuit court of Marion County on June 8, 1982. That judgment incorporated a marital settlement agreement which provided, in part, that "husband and wife shall have joint custody of [Shawn]." The agreement further provided that "[e]ach parent shall have custody of said child on alternating weeks."

At the time of the dissolution, the parties both resided in Kinmundy, Illinois. Petitioner subsequently remarried and moved to Salem, Illinois, which is another school district. In August of 1984, when Shawn was about to enter kindergarten, petitioner applied to the court for an order modifying the original judgment of dissolution to award her full custody and control of Shawn, to give respondent liberal visitation with Shawn, and to make appropriate changes to the child-support arrangements. (Petitioner later filed two amended versions of this petition to modify, but each sought essentially the same relief.) On August 13, 1984, petitioner moved for temporary custody of Shawn pending a hearing on her petition to modify so that Shawn could be enrolled in the Salem schools, which were scheduled to commence classes on August 30. That motion was denied when respondent decided to relocate to Salem too and Shawn was able to begin school there without immediate alteration of his parents' custody rights. On June 14, 1985, petitioner further moved the court for leave to take Shawn from the State of Illinois to Nashville, Tennessee, where petitioner's new husband had secured employment.

Respondent opposed the petition to modify, did not want Shawn removed from the state, and requested that the court award him permanent custody and control of the child. Pursuant to section 605 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 605) the court directed the Department of Children and Family Services (DCFS) to investigate the respective parties' custodial arrangements for Shawn and to submit a report on its findings. That report (hereinafter referred to as the home study report) was filed by DCFS on May 30, 1985. On June 14, 1985, Shawn was interviewed in chambers by the presiding judge. Counsel for the parties

were present. Thereafter, on June 18, 19 and 27, a hearing was held on the merits of petitioner's motion to remove Shawn from Illinois and petition to modify. On June 28, the court issued a ruling from the bench on these pleadings, but requested that counsel prepare an appropriate written order, which they did. That order was filed by the court on August 30 and amended on December 13 pursuant to respondent's post-trial motion. In the order, as amended, the court denied petitioner's petition to modify and granted respondent's request that he be given primary physical custody of Shawn, subject to liberal visitation by petitioner, but refused to formally terminate joint custody. Petitioner now appeals.

■ Section 603.1(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 603.1(c)) provides that "[a]ny order of joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion under the standards of Section 610." Section 610(b) (Ill. Rev. Stat. 1983, ch. 40, par. 610(b)) prohibits a modification of custody unless the court finds by clear and convincing evidence that both: (1) a change of circumstances has occurred and (2) modification of the prior custody judgment is necessary to serve the best interests of the child. (*Vollmer v. Mattox* (1985), 137 Ill. App. 3d 1, 5, 484 N.E.2d 311, 313.) The order at issue here makes detailed findings regarding the second of these requirements, but is silent as to the first. The explanation for this omission appears to be that the parties never disputed that petitioner's decision to move just as Shawn was about to start school would, in fact, constitute a change of circumstances within the meaning of the statute. Because the court failed to specify that it relied on this change of circumstances in making its decision, however, petitioner contends that the court's order is technically deficient. Such is not the case.

■ Public Act 84—795 repealed section 603.1 and amended section 610(b) to provide that "[t]he court shall state in its decisions specific findings of fact in support of its modification or termination of joint custody if either parent opposes the modification or termination." (Ill. Rev. Stat. 1985, ch. 40, par. 610(b).) That Act did not, however, become effective until January 1, 1986, after the order at issue here was entered and the appeal filed. Pursuant to section 801(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 801(d)), Public Act 84—795 is therefore inapplicable to this case. Rather, we must review the circuit court's order in accordance with the law in effect at the time that the order was entered. *In re Marriage of Brown* (1984), 127 Ill. App. 3d 831, 834-35,

469 N.E.2d 612, 614-15.

■ In *Vollmer v. Mattox* (1985), 137 Ill. App. 3d 1, 5-6, 484 N.E.2d 311, 313, a panel of this court did reverse a custody modification order for failure to comply with the same version of section 610(b) involved here (Ill. Rev. Stat. 1983, ch. 40, par. 610(b)) on the grounds that the order failed to make sufficiently specific findings concerning the requisite change in circumstances. The *Vollmer* panel was guided in its decision by *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499, wherein our supreme court stated that explicit findings were "indispensable requirements" under an earlier version of the law. (77 Ill. 2d 414, 420, 396 N.E.2d 499, 501.) Other courts, following *In re Custody of Harne* have similarly held that custody modification orders which do not contain such findings must be reversed. (See, *e.g., In re Custody of Carter* (1985), 137 Ill. App. 3d 439, 441, 484 N.E.2d 1175, 1177-78.) In *In re Custody of Blonsky* (1980), 84 Ill. App. 3d 810, 817, 405 N.E.2d 1112, 1117, however, the First District Appellate Court, Fourth Division, distinguished *In re Custody of Harne* and concluded that specific findings are not necessary where, as here, the judgment sought to be modified provided for joint custody and the change in circumstances requiring modification was indisputably established. We agree with *Blonsky* which, like the case at bar, involved a situation where the onset of the child's school years required a change in custody arrangements in order to serve the child's best interests. Accordingly, we find that the trial court here did not err in failing to articulate the change in circumstances upon which its order was based.

In contrast to the absence of findings on the change in circumstances, the court did, as previously noted, make extensive findings regarding the best interests of the child. After considering each of the factors set forth in section 602(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 602(a)), the court reached the following conclusion:

"Although this is a close case, two factors tip the scales in the balance of the father [respondent]:

(a) In looking at the preference of the child, although the child stated, in chambers that he would not be mad at the judge if he awarded custody to either parent, the child stated, in the interview with Edith Holsapple of the Department of Children & Family Services, in conducting the home study that he was happiest when he was with his dad a little longer.

(b) While not provided for in the Dissolution of Marriage Act, the Adoption Act provides for consideration of religious

beliefs. It is the Court's opinion that upbringing in religion is important to a child of this age."

Petitioner objects to the court's reliance on the statements made by Shawn in the home study report on the grounds that Shawn was not sufficiently mature at age six to intelligently express a preference as to custody, that his statements were not made under conditions assuring their trustworthiness, that petitioner was denied the opportunity to cross-examine the Department of Children and Family Services investigator regarding the statements, that the statements are mere hearsay, and that the statements contradicted remarks made by Shawn to the trial court in chambers. We agree that the court's findings regarding Shawn's preference for custody were improper, but we do not reach the merits of these particular objections, for there are more fundamental flaws with the court's decision.

■ First, the court's apparent belief that Shawn preferred being with respondent is not supported by the evidence, even if we assume that Shawn's statements in the home study report are not inadmissible as hearsay. In the report done while Shawn was staying with respondent, the investigator reported Shawn as having said that he "liked it [the custody arrangement] the way it was," a point omitted by the trial court. The trial court further omitted reference to the conclusion drawn by the investigator after her interview with Shawn at petitioner's home that "[a]t this point Shawn is feeling the strain of his custody battle. He loves them [his parents] both and doesn't really want anything changed." When Shawn was interviewed in chambers, this is the exchange which took place:

> "Court: So you won't be upset if I tell you that you are going to live with your mom and you won't be upset if I tell you that you have to live with your dad?
> Shawn: No.
> Court: So either way you would be happy?
> Shawn: Yeah."

In view of this evidence, we cannot see how Shawn can reasonably be said to have expressed a preference in favor of respondent.

■ Second, assuming Shawn's remarks could somehow be construed as favoring respondent, we nevertheless do not believe that the trial court should have relied on Shawn's wishes in reaching its decision on the facts present here. Although section 602(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 602(a)) provides that a child's wishes as to his custodian are a relevant factor to be considered by the court in determining the child's best interests, those wishes should affect the court's decision only

where the child's preference is based upon reasons related to his best interests. (*Garland v. Garland* (1974), 19 Ill. App. 3d 951, 956, 312 N.E.2d 811, 815.) In this case, no reasons of any kind were given, either in the home study report or in the interview conducted by the court in chambers. No citation of authority or elaborate analysis is necessary to support the proposition that a six-year-old's wishes may be influenced by factors which are actually inimical to his welfare. If Shawn does indeed prefer the custodianship of respondent, there is simply no way to ascertain from this record whether that preference is based upon considerations which will advance or impede his best interests. Shawn's professed preference, such as it is, thus contributes nothing toward resolution of this case.

■■■ Petitioner next argues that the court's consideration of the parties' religious beliefs violates the establishment clause of the first amendment to the United States Constitution (U.S. Const., amend. I). Again we agree. *In re Marriage of Ford* (1980), 91 Ill. App. 3d 1066, 1070, 415 N.E.2d 546, 550; *Kjellesvik v. Shannon* (1976), 41 Ill. App. 3d 674, 678, 355 N.E.2d 120, 124; and *Wilner v. Wilner* (1971), 131 Ill. App. 2d 891, 898-99, 266 N.E.2d 918, 923, each held that the admission of evidence regarding a parent's religious affiliations did not, in itself, constitute reversible error. In those cases, however, the appellate courts understood the evidence to have been admitted simply as a means of gaining "insight into the entire family picture." (*In re Marriage of Ford* (1980), 91 Ill. App. 3d 1066, 1070, 415 N.E.2d 546, 550; *Kjellesvik v. Shannon* (1976), 41 Ill. App. 3d 674, 678, 355 N.E.2d 120, 124.) More importantly, the appellate courts' rulings were expressly premised on the fact that the trial courts' decisions had not been influenced or determined by the question of religious preference. This case is quite different. As previously indicated, the trial court here specifically cited religion as the second of the two factors which "tip[ped] the scales" in favor of respondent.

The record before us shows only that petitioner is an Episcopalian and her husband, Peter Zucco III, a Catholic, but neither attends church. Respondent, on the other hand, is a regular churchgoer. He attends services on Sundays and participates in church-sponsored activities with Shawn. In addition, Shawn told the trial judge, in chambers, that he goes to church with his father, but has not been to his mother's church. Given these limited facts, we interpret the trial court's decision as being premised on the belief that active participation in an organized religion should be given preference over a more passive form of religious faith in awarding child custody. Such a belief cannot be countenanced by this court.

The establishment clause of the first amendment (U.S. Const., amend. I) prohibits State and Federal action "favoring the tenets or adherents of any religion or of religion over nonreligion." (*McDaniel v. Paty* (1978), 435 U.S. 618, 638, 55 L. Ed. 2d 593, 608, 98 S. Ct. 1322, 1334 (Brennan, J., concurring).) In determining whether governmental action offends the establishment clause, a court must apply the tripartite test established by *Lemon v. Kurtzman* (1971), 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105. That test requires: (1) that the action have a secular purpose, (2) that its principal or primary effect neither advances nor inhibits religion, and (3) that it does not foster an excessive entanglement with religion. (403 U.S. 602, 612-13, 29 L. Ed. 2d 745, 755, 91 S. Ct. 2105, 2111.) Although this test was developed in the context of statutory enactments, we believe that it applies with equal force to judicial determinations as to child custody. See Note, *The Establishment Clause and Religion in Child Custody Disputes: Factoring Religion into the Best Interest Equation*, 82 Mich. L. Rev. 1702, 1708 (1984).

To pass constitutional muster, governmental action challenged as violative of the establishment clause must meet all three of the aforementioned criteria. (See *Lemon v. Kurtzman* (1971), 403 U.S. 602, 612-13, 29 L. Ed. 2d 745, 755, 91 S. Ct. 2105, 2111.) The trial court's decision here does not.

■ The record contains no suggestion that the religious beliefs, or lack thereof, of either parent pose a substantial threat of, or would result in, actual physical, emotional or mental injury to Shawn. (See *Bonjour v. Bonjour* (Alaska 1979), 592 P.2d 1233, 1240; *Quiner v. Quiner* (Cal. App. 1967), 59 Cal. Rptr. 503, 516.) Absent such evidence, we cannot see how awarding custody of Shawn to respondent advances any secular purpose. A party's "religiousness," standing alone, is an uncertain guide to his fitness as a parent. As our supreme court noted more than a century ago:

> "It is unnecessary to say, that a woman may attend church, may teach in a Sabbath school, and play both piano and organ, and yet be wholly unfit to be the mistress over a girl reared in tenderness and affection ***." *Hewitt v. Long* (1875), 76 Ill. 399, 402-03.

While consideration of religion may be proper where a child is shown to have actual religious needs (see *Bonjour v. Bonjour* (Alaska 1979), 592 P.2d 1233, 1242; *Developments in the Law: The Constitution and the Family*, 93 Harv. L. Rev. 1156, 1339 (1980)), this is not such a case. Neither Shawn nor any other witness was questioned to determine what, if any, personal religious preferences Shawn might

have. One therefore cannot say that Shawn's exercise of his own religious beliefs (assuming, *arguendo*, that he was sufficiently mature to have formed an intelligent opinion on the subject) would be better accommodated, or might be thwarted, by one parent or the other. To award custody of Shawn to respondent under these circumstances is to conclude that providing a religious environment is *per se* beneficial to a child's welfare. We believe, however, that the intrinsic benefits, if any, of an "upbringing in religion" are beyond the power of a civil court to comprehend. It is for this very reason that religion, in and of itself, must play no role in judicial determinations as to child custody. In the words of the California Court of Appeals:

> "Precisely because a court cannot *know* one way or another, with any degree of certainty, the proper or sure road to personal security and happiness or to religious salvation, which latter to untold millions is their primary and ultimate best interest, a valuation of religious teaching and training and its projected as distinguished from immediate effect (psychologists and psychiatrists to the contrary notwithstanding) upon the physical, mental and emotional well-being of a child, must be forcibly kept from judicial determinations. Numerous profound thinkers have fixed convictions that *all* religion is bad, particularly so in the rearing of children. If a court has the right to weigh the religious beliefs or lack of them of one parent against those of the other, for the purpose of making the precise conclusion as to which one is for the best interests of a child, we open a Pandora's box which can never be closed. By their very nature religious evaluations are subject to question, disbelief, and difference of opinion. Whether or not this was the "foresight" of our constitutional planners, the First Amendment in conjunction with the Fourteenth solves the problem; it legally prohibits such religious evaluations." (Emphasis in original.) *Quiner v. Quiner* (Cal. App. 1967), 59 Cal. Rptr. 503, 516-17.

██ Even if the circuit court's preference for respondent's religious practices would advance some secular purpose, it would nevertheless fail the second prong of the *Lemon* test by directly and immediately advancing religion. The principle or primary effects of giving preference to parents who are active adherents of organized religion will be (1) to punish parents who do not believe in God or going to church by making it less likely that they will gain custody of their children (Note, *The Establishment Clause in Religion and Child Custody Disputes: Factoring Religion into the Best Interest Equation*, 82

Mich. L. Rev. 1702, 1722 (1984)), (2) to encourage nonreligious, antireligious, or simply disinterested parents to engage in religious practices even if their beliefs are not sincere, and (3) to increase the number of children raised in religious households. This goes beyond accommodation and benevolent neutrality towards religion, while not advancing any values protected by the free exercise clause. (*Bonjour v. Bonjour* (Alaska 1979), 592 P.2d 1233, 1243.) It places the authority, influence, support and power of the government on the side of organized religion, a nonsecular result that the establishment clause is designed to prevent.

Because the trial court's decision thus fails the first two requirements of *Lemon v. Kurtzman* (1971), 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105, we need not address the third factor, whether it fosters an excessive entanglement with religion. Nor need we address its validity under our State constitution.

 In child-custody matters, the trial court is vested with broad discretion, subject to review, in determining where the best interests of the child lie. As the trial court is in a superior position to determine the child's best interests, its determination will not be disturbed on review unless it is clearly against the manifest weight of the evidence or represents an abuse of discretion. (*Kjellesvik v. Shannon* (1976), 41 Ill. App. 3d 674, 677, 355 N.E.2d 120, 124.) For the reasons set forth above, however, we believe that the trial court here abused its discretion in relying on Shawn's professed preference for custodianship and the parties' religious practices as the determinative factors in making its decision. Accordingly, the court's judgment must be reversed and the case remanded for a new determination as to custody. In view of this ruling, petitioner's final argument, that the circuit court's judgment is otherwise contrary to the manifest weight of the evidence, need not be reached.

Reversed and remanded.

KARNS, P.J., concurs.

JUSTICE KASSERMAN, specially concurring:
I concur with the conclusion of the majority that the trial court, in considering the determinative factors in awarding custody, abused its discretion in relying on: (1) the professed preference of the parties' son for custodianship and (2) the parties' religious practices. I also agree that the instant cause must be remanded to the trial court for a new determination as to custody.

Although I agree with this aspect of the decision of the majority, I would also reverse and remand the case at bar on the basis that the trial court failed to comply with the requirements of *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499.

Section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 610(b)), requires a finding by the trial court that a change of circumstances has occurred. The majority recognizes that under the decision in *Harne*, an express finding that a change in circumstances has occurred is an "indispensable requirement." The majority further recognizes that this court applied the dictates of *Harne* in *Vollmer v. Mattox* (1985), 137 Ill. App. 3d 1, 484 N.E.2d 311, and reversed the trial court for its failure to make sufficiently specific findings concerning the requisite change in circumstances. In spite of this precedent, the majority chooses to follow an earlier decision of the Appellate Court for the First District in *In re Custody of Blonsky* (1980), 84 Ill. App. 3d 810, 405 N.E.2d 1112, which attempted to distinguish *Harne*. I see no reason for this court in the instant appeal to depart from the rationale of *Harne* and the prior decision of this court in *Vollmer v. Mattox*.

Furthermore, as stated by the majority, Public Act 84—795 has been amended to provide that the court shall state in its decision "specific findings of fact" in support of its modification or termination of joint custody if either parent opposes the modification or termination. (Ill. Rev. Stat. 1985, ch. 40, par. 610(b).) In this regard, Illinois courts have recognized that it is proper to consider a subsequent amendment as an expression of legislative intent as to the original statute. *In re Marriage of Semmler* (1985), 107 Ill. 2d 130, 137, 481 N.E.2d 716, 719; *People v. Williams* (1986), 142 Ill. App. 3d 266, 273, 491 N.E.2d 941, 945.

Based on the foregoing, I would also reverse the decision of the circuit court of Marion County for its failure to make the specific findings required by section 610(b) of the Illinois Marriage and Dissolution of Marriage Act and would remand the instant cause to the trial court for the purpose of making such findings.