**Sarah Beth Soapes NEELY,
Plaintiff/Appellee,**

v.

**Milton Dewayne NEELY,
Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

June 10, 1987.

Published in Accordance
With Tenn.Ct.App. R. 11.

Judy L. Bond-McKissack, Legal Services of Middle Tennessee, Clarksville, for plaintiff/appellee.

Ronald B. Buchanan, Buchanan, Edwards & Detring, Hendersonville, for defendant/appellant.

KOCH, Judge.

## OPINION

This appeal involves a father's efforts to modify the visitation provisions of a divorce decree. He requested the Circuit Court for Robertson County to delete the requirement that he return his son to his former wife on Sunday morning during his visitation to enable the boy to accompany his mother to church. The trial court denied the father's request on the ground that it was not in the child's best interests to modify the existing visitation arrangements. The father has perfected this appeal. He insists that the trial court erred by structuring his visitation with his son in a way that prevents his son from accompanying him to church. The evidence does not show that the parents' different religious beliefs are affecting the welfare of the child. Therefore, we vacate the trial court's order and remand the case with directions.

### I.

Milton Dewayne Neely and Sarah Beth Soapes Neely were divorced on April 9, 1985. Sarah Neely was given custody of the parties' minor son who was five years old at the time of the divorce. The trial court, specifically recognizing that "a minor child's relationship with both parents should be as strong as possible", directed that Mr. Neely would have visitation with

his son "every other Friday from 6:00 p.m. until Sunday at 6:00 p.m."

Mrs. Neely was an active Baptist at the time the divorce was granted. She regularly took her son to church on Sunday for morning and evening services. Mr. Neely did not attend church regularly at that time. Therefore, the trial court included the following provision in the divorce decree that is at the heart of the present dispute:

> The court recognizes that on Sunday mornings it is important that Jason be in church. On weekends that Jason is with his father, the Plaintiff, Milton Dewayne Neely, shall leave the minor child at the home of his mother ready and dressed thirty (30) minutes prior to the start of church services. The Plaintiff shall have the right to pick up the minor child after church services for visitation until 6:00 P.M.

Following the divorce, Mr. Neely moved from Robertson County to Davidson County. He remarried and began to attend a Pentecostal church regularly.

In October, 1985, Mrs. Neely filed a petition in the trial court seeking to hold Mr. Neely in contempt because he was not returning their son on Sunday morning so she could take him to her church. Mr. Neely filed a counter-petition insisting that his relocation to Davidson County and his regular church attendance were changed circumstances warranting a modification of the visitation provisions of the original divorce decree. Specifically, he asserted:

> That at the time of the hearing of the divorce, the Defendant/Counter-Plaintiff was not going to church and has now joined a church and is attending regularly. The Court should not specify as to which church the child goes to, but the father should be entitled to take the child to his church on alternating weekends when he exercises visitation.

Mrs. Neely replied to this petition that Mr. Neely should not be permitted to take their son to the Pentecostal church. At the hearing on this petition, she explained that she wanted to raise her son as a Baptist and that she objected to the Pentecostal belief concerning "speaking in tongues." She insisted that her son would be "confused" if Mr. Neely were permitted to take him to the Pentecostal church. Mrs. Neely did not question the sincerity of Mr. Neely's religious beliefs.

The trial court heard proof on the parties' petitions on February 7, 1986 and issued two orders, one on February 28, 1986 and another on March 7, 1986.[1] The trial court found that "no purpose would be served" by holding Mr. Neely in contempt. It also held that Mr. Neely's regular church attendance since the divorce was granted was a changed circumstance. However, the trial court declined to modify the existing visitation arrangements stating:

> The Court finds that Jason needs stability and needs to know where his church is and where his home is and to be comfortable with that knowledge.

Mr. Neely filed a Tenn.R.Civ.P. 59 motion requesting that the trial court amend its order on the ground that it deprived "the non-custodial parent the right to expose his children to his religious beliefs." The trial court entered an order on April 24, 1986 stating:

> The Court finds that the proper standard in determining whether an order of visitation should be changed is the "best interests of the child." The Court finds that the child, JASON, is a young child of very impressionable age. It is important that the child has developed friendships with other children even if these relationships have developed through Jason attending church with his mother. At the time of the entry of the original order of visitation, the defendant, MILTON DEWAYNE NEELY, was not attending church services.
>
> The Court finds that JASON needs the stability of knowing where his home is and where his church is and he needs to be comfortable with that knowledge.

---

1. These two orders embody the same subject matter and appear to be the parties' respective versions of the trial court's ruling on February 7, 1986. We have determined that these two orders should be read together as the ruling of the trial court.

The Court does not intend and does not indicate to anyone that it can or would try to make a choice between the religion of either parent. The court cannot make any statement (sic) regarding religious beliefs and finds that the issue before this Court is one of the stability and best interest of the child. The Court finds that amending the original order of visitation will not maintain the stability that JASON needs and is not in JASON's best interest.

## II.

### The Rights of Natural Parents

The relationship between parent and child occupies a unique place in our legal culture. Natural parents have fundamental interests in their children, *State ex rel. Bethel v. Kilvington*, 100 Tenn. 227, 236, 45 S.W. 433, 435 (1898), which are more precious than property rights and more significant than the liberties derived from shifting economic arrangements. *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 38, 101 S.Ct. 2153, 2165, 68 L.Ed.2d 640 (1981) (Blackmun, J., dissenting). This Court has found these interests to be the "most basic of civil rights." *In re Riggs*, 612 S.W.2d 461, 469 (Tenn.Ct.App.1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981).

The Tennessee Supreme Court has recognized that

The right to the society of the child exists in its parents; the right to rear it, to its custody, to its tutorage, the shaping of its destiny, and all of the consequences that naturally follow from the relationship are inherently in the natural parents, and they cannot be deprived of these rights without notice, and upon some ground which affects materially the future of the child. *In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917).

Similarly, the United States Supreme Court has held that parents have the right and the duty, free from governmental interference, to nurture their children, to direct their destiny and to inculcate moral standards, religious beliefs and elements of good citizenship in them. *Wisconsin v. Yoder*, 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15 (1972); *Pierce v. Society of the Sisters of the Holy Name of Jesus and Mary*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925).

When divorce ends the marriage of a child's natural parents, the primary responsibility for the care of the child rests with the custodial parent. However, the non-custodial parent's interests in the child are not completely extinguished following a divorce. *Morris v. Morris*, 271 Pa.Super. 19, 412 A.2d 139, 144 (1979). See also Note, *The Religious Upbringing of Children After Divorce*, 56 Notre Dame Law 160, 169–70 (1980).

The courts should not lightly and without good cause sever the non-custodial parent's right to the care and companionship of a child. See *Stubblefield v. State ex rel. Fjelstad*, 171 Tenn. 580, 587, 106 S.W.2d 558, 560 (1937). This Court has recognized that it is important for a child to maintain a relationship with the non-custodial natural parent. *Dillow v. Dillow*, 575 S.W.2d 289, 291 (Tenn.Ct.App.1978). Accordingly, we have held that visitation provisions in a divorce decree should be modified if they prevent the relationship between the child and the natural parent from growing and developing normally. *Bryan v. Bryan*, 620 S.W.2d 85, 88 (Tenn.Ct.App.1981).

The rights, desires, and interests of the parents become secondary in child custody and visitation cases. *Riddick v. Riddick*, 497 S.W.2d 740, 742 (Tenn.Ct.App. 1973). The welfare and best interests of the child are the paramount considerations. *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983). However, the rights of the parents cannot be ignored and must be weighed in the balance when a court makes a decision that will affect the parent/child relationship. Courts should attempt, to the extent warranted by the facts, to devise a custody and visitation arrangement that interferes with the parent/child relationship as little as possible. *In re Marriage of Mentry*, 142 Cal.App.3d 260, 267–68, 190 Cal.Rptr.

843, 848–49 (1983); *State ex rel. Juvenile Department of Polk County v. Tucker*, 83 Or.App. 330, 731 P.2d 1051, 1053 (1987). However, when the parents remain at odds, the best interests of the child may require some limitations on the rights and interests of either or both of the parents. *Fisher v. Fisher*, 118 Mich.App. 227, 324 N.W.2d 582, 584 (1982); *Felton v. Felton*, 383 Mass. 232, 418 N.E.2d 606, 607 (1981).

## III.

### Disputes Concerning a Child's Religious Upbringing

The freedom of choice in matters of family life is also a fundamental liberty interest. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982). Thus, the vast majority of matters concerning the upbringing of children should be left to the conscience, patience, and self-restraint of their natural mother and father. No end of difficulties arise when the courts begin to tell parents how to bring up their children. *In re Marriage of Mentry*, 142 Cal.App.3d 260, 267, 190 Cal.Rptr. 843, 848 (1983). However, the courts are invariably called upon to make these decisions after parents have been divorced. No other area of parental disagreement presents a court with a more intractable problem than disputes involving a child's religious upbringing.

■ Courts must maintain strict neutrality in cases involving religious disputes between divorced parents. *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861, 863 (1977); *Zucco v. Garrett*, 150 Ill.App.3d 146, 103 Ill.Dec. 558, 563–64, 501 N.E.2d 875, 880–81 (1986); *Fisher v. Fisher*, 118 Mich.App. 227, 324 N.W.2d 582, 585 (1982); *Burnham v. Burnham*, 208 Neb. 498, 304 N.W.2d 58, 61 (1981); *Munoz v. Munoz*, 79 Wash.2d 810, 489 P.2d 1133, 1135 (1971) (en banc). Thus, this Court and others have held that the parties' religious beliefs cannot be controlling in custody cases. *Mollish v. Mollish*, 494 S.W.2d 145, 152 (Tenn. Ct.App.1972). *See also* H. Clark, *The Law of Domestic Relations in the United States*, § 17.4, at 588–90 (1968); Annot., 22 A.L.R.4th 971 (1983).

■ The religious beliefs of both parents are important. *Cissell v. Cissell*, 573 S.W.2d 722, 724 (Mo.Ct.App.1978). In fact, the law tolerates and even encourages, up to a point, the child's exposure to the religious influences of both parents even if they are divided in their faiths. *Felton v. Felton*, 383 Mass. 232, 418 N.E.2d 606, 607 (1981). Thus, a court cannot prefer the religious views of one parent over another unless one parent's religious beliefs and practices threaten the health and well-being of the child. *In re Marriage of Short*, 698 P.2d 1310, 1313 (Colo.1985) (en banc); *In re Marriage of Knighton*, 723 S.W.2d 274, 278 (Tex.Ct.App.1987). In the absence of a showing of harm to the child, visitation provisions cannot have the effect of advancing one parent's religion while inhibiting that of the other parent. *Sanborn v. Sanborn*, 123 N.H. 740, 465 A.2d 888, 894 (1983).

Most courts considering religious disputes between divorced parents have declined to interfere with a non-custodial parent's exposing a minor child to his or her religious beliefs in the absence of a clear and affirmative showing that these activities and expressions of belief are harmful to the child. *In re Marriage of Murga*, 103 Cal.App.3d 498, 506, 163 Cal.Rptr. 79, 82 (1980); *In re Marriage of Heriford*, 586 S.W.2d 769, 772 (Mo.Ct.App.1979); *In re Marriage of Knighton*, 723 S.W.2d 274, 278 (Tex.Ct.App.1987); *Munoz v. Munoz*, 79 Wash.2d 810, 489 P.2d 1133, 1135 (1971). *See also* 3 *Child Custody and Visitation Law and Practice*, § 16.02[3][h] (1986); 27C C.J.S. *Divorce*, § 634 (1986).

The harm to a child from being exposed to its parents' conflicting religious beliefs cannot be simply assumed or surmised. It must be demonstrated in detail. *Felton v. Felton*, 383 Mass. 232, 418 N.E.2d 606, 607 (1981).[2] Thus, a custodial parent's asser-

2. The courts have based findings that the parents' conflicting religious beliefs are harming the child upon the testimony of psychologists, ministers and rabbis. *Funk v. Ossman*, 150 Ariz. 578, 724 P.2d 1247 (Ct.App.1986); *Andros v. Andros*, 396 N.W.2d 917 (Minn.Ct.App.1986);

tions that the child will be harmed or might be confused do not provide a court with a sufficient basis to interfere with the non-custodial parent's interests in exposing a child to his or her religious beliefs. *In re Marriage of Mentry,* 142 Cal.App.3d 260, 266, 190 Cal.Rptr. 843, 847 (1983); *Felton v. Felton,* 383 Mass. 232, 418 N.E.2d 606, 610 (1981); *Robertson v. Robertson,* 19 Wash.App. 425, 575 P.2d 1092, 1093 (1978).

## IV.

### *The Trial Court's Decision*

Our review of a trial court's decision regarding visitation and custody is governed by Tenn.R.App.P. 13(d). Thus, we review the record de novo with the presumption that the trial court's findings of fact are correct. *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn.1984). However, we review the details of the trial court's custody and visitation arrangements to determine whether the trial court abused its discretion. *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn.Ct.App.1973).

A trial court's decisions involving custody and visitation, once made, are final and will not be modified unless the trial court is satisfied that a material change in circumstances has occurred since the divorce decree was entered. *Young v. Smith,* 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *Long v. Long,* 488 S.W.2d 729, 731–32 (Tenn.Ct.App.1972). There are no hard and fast rules concerning what constitutes a "changed circumstance." *Dantzler v. Dantzler,* 665 S.W.2d 385, 387 (Tenn.Ct. App.1983).

■ We concur in the findings of fact contained in the trial court's order that: (1) Jason is a young child of impressionable age; (2) Jason has developed relationships with other children by attending church with his mother; (3) Mr. Neely did not attend church when the original divorce decree was entered; and (4) Mr. Neely's regular church attendance following the divorce is a changed circumstance. However, we have concluded that the trial court abused its discretion by failing to delete the

*Bentley v. Bentley,* 86 A.D.2d 926, 448 N.Y.S.2d 559 (1982).

requirement that Mr. Neely must return his son to Mrs. Neely during his visitation period to enable her to take the boy to her church.

The trial court apparently believed that preserving this restriction on Mr. Neely's visitation rights would enable his son to maintain relations with the children he met at his mother's church and to know "where his home is and where his church is." We have determined that the restriction of Mr. Neely's visitation rights goes too far. There is no proof in the record that the boy will not be able to maintain relations with his friends by attending church with his mother every other Sunday morning and every Sunday evening. There is likewise no proof that exposing the boy to his father's religion has or will affect his mental or physical well-being. Mrs. Neely's subjective and presently unsubstantiated belief that her son could become confused does not provide a sufficient basis for the courts to interfere with the natural development of the relationship between Mr. Neely and his son.

## V.

For the reasons stated herein, the judgment of the trial court is vacated. This case is remanded to the trial court for the purpose of entering an amended custody and visitation order deleting the requirement that Mr. Neely return his son to Mrs. Neely on Sunday morning when he is exercising his visitation rights. The costs of this appeal are taxed to Sarah Beth Soapes Neely and to Milton Dewayne Neely and their respective sureties in equal proportions for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.