RITA ANN LAYNE WATERS,        )
                              )
        Plaintiff/Appellee,   )        Appeal No.
                              )        01-A-01-9708-CV-00402
v.                            )
                              )        Marion Circuit
STACY LAYNE,                  )        No. 7341
                              )
        Defendant/Appellant.  )

FILED

March 27, 1998

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT OF MARION COUNTY

AT JASPER, TENNESSEE


THE HONORABLE BUDDY D. PERRY, JUDGE


RITA WATERS, PRO SE
2570 Alvin York Highway
Whitwell, Tennessee 37397

BARBARA L. BROERSMA
P.O. Box 4362
Chattanooga, Tennessee 37405
ATTORNEY FOR THE DEFENDANT/APPELLANT


AFFIRMED AND REMANDED


SAMUEL L. LEWIS, JUDGE

O P I N I O N

This is an appeal from the most recent of custody orders concerning Amanda Brooke Layne ("the child") who is the minor daughter of Stacy Layne ("the Father") and Rita Ann Layne Waters ("the Mother"). The Circuit Court of Marion County ordered that custody of the child be changed from the Father to the Mother and set up a schedule for visitation with the Father. The Father has appealed to this court. On appeal, we must determine whether the trial court erred in finding that a change of circumstances had occurred such that it should transfer custody of the child from the Father to the Mother. In addition, the Father challenges the visitation as scheduled by the trial court claiming that the court erred in not granting "extended and frequent visitation."

The record shows that the parties in this case were divorced in January of 1988 after which time ensued a succession of arrangements regarding the custody of their then three-year-old daughter. Custody was initially awarded to the Mother. Thereafter, the Father petitioned for custody alleging that the child had suffered abuse at the hands of one Evert Mardis. The court awarded the Father temporary custody of the child and granted visitation to the Mother which was conditioned upon the child not coming into contact with Mr. Mardis. Subsequent to this, custody again changed when a series of agreed orders provided that the parties should have joint custody. A final agreed order was entered in January of 1994 which provided that the Father and his then wife Judy Layne would have custody of the child and that the Mother and her husband would have visitation every weekend.

The action before us began when, in February of 1997, the Mother petitioned for custody of the child claiming that circumstances had changed since the time of the agreed order which gave custody to the Father. She asserted that the Father was no longer married and was not properly caring for the child. At trial, the Mother explained that when she had remarried, the child had wanted to live with her father and she agreed for the Father and Judy Layne to have custody of the child. However, she filed for a change of custody once she learned that the Father and Judy Layne were divorced. The Mother, who received a small income from babysitting, said that she had been married to her current husband for three and a half years and that he liked the child and did not object to her coming to live with them. The Mother

2

claimed that she and Judy Layne took care of the child. When asked about the alleged incident with Mr. Mardis, the Mother asserted that these accusations had not been proven. Nonetheless, she testified that though Mr. Mardis might have occasionally been around the child, he had never been alone with her.

Ricky Waters, the Mother's current husband, testified that the child had been regularly visiting his home since he married the Mother in November of 1993. He said that they were adding onto their home so that the child would have her own room. He said that she would be covered on his insurance once they had full custody. He testified that Evert Mardis was his brother and that he came around once or twice a month to help fix things. Mr. Waters was aware of the allegations against Mr. Mardis but saw no problem with taking the child around him now. He did assert that Mr. Mardis "has not been close enough to even touch her at all."

Judy Layne confirmed that she and the Father divorced in November of 1996. She testified that once she and the Father stopped living together in March of 1996, the child remained with her in the marital home. She said that the child stayed with her from March of 1996 until after the divorce in February of 1997. During this time, though the Father occasionally gave the child $10 or $15, it was Ms. Layne who paid for the child's clothing and doctor's appointments. Ms. Layne said that while the child lived with her, the child visited the Father when he came by the house during meal times but she spent only about three nights with the Father outside of the home as he would only let her come these few times. Ms. Layne testified that the Father had not been giving her money to pay the mortgage payments for the house in which she and the child lived and in which she, the child, and the Father had lived together since October of 1994. Regarding her relationship with the child, Ms. Layne claimed that they were attached to one another. She thought it was good for the child to remain in the house with her where she had her own room. Ms. Layne admitted that she was angry at the Father for taking the child from her. When confronted with the reality that she would not get custody of the child despite the outcome of the matter between the Father and the Mother, she said that "[the Mother] will let me see her when he won't let me see her." Ms. Layne's sister, Debbie Chance testified and confirmed that, every day for the past three years, she had taken the child to school for her sister Ms. Layne.

The Father testified that he had held the same job for the past eleven years. At the time of the trial, he lived with his current wife Deborah Ann Layne and the child in a three bedroom house. Prior to this, he had lived in a one bedroom apartment for ten or eleven months which was all he could afford. During this time, he acknowledged that the child stayed with his ex-wife Judy Layne in their former home. He claimed that this was best so that the child could have her own bedroom and maintain her routine. He testified that he went by every afternoon and had dinner with the child. He claimed that, during this time, he was giving Judy Layne enough money to pay the mortgage with some left over to pay for the child's clothes. According to the Father, the child is doing fine living with him and his new wife. Now that the child lives with him and his new wife, his mother-in-law takes her to school. The Father gets home everyday by 3:30 or 4:00, eats with the child and then spends time with her. It was his testimony that his ex-wife Judy and not the Mother was the primary provider for the child over the past years. However, he did agree that the Mother cared for the child when she was in the Mother's custody. He said that since 1994, in addition to seeing the Mother every weekend, the child saw her any other time that she wanted.

Linda Frizzell, the Father's current mother-in-law confirmed that she has fixed the child's breakfast and taken her to school every morning since her daughter married the Father which was only three weeks prior to the trial. She testified that the child seems happy and healthy. She also said that she picks up the child in the afternoons. Deborah Layne, the Father's current wife testified that she is an x-ray technologist. She claimed to have a good relationship with the child: together they play ball, ride bikes and walk, and study for the child's school.

At the close of all the proof, the trial judge articulated the applicable legal standard as follows:

> I have to determine if there has been a change of circumstances. If there has been a change of circumstances, what would be in the best interest of the child, it would require me to give custody to the [M]other, then I am compelled to do so. If there has not been a change of circumstances then the child has to remain with the [F]ather. And I think the issue for me in this case is the divorce from a stable care provider for a child a change in circumstances sufficient to justify me removing the child from the father and giving the child to the mother.

The judge voiced his opinion that if it were an option, he would award custody to

4

Judy Layne who has been the obvious "caretaker and provider over the past few years." However, it the final order, custody was transferred to the Mother due to the fact that the Father, "as many fathers, allowed his wife to be the primary care giver while he earned a living." The court ordered that the Father should have visitation every other weekend from Friday 6:00 p.m. to Sunday 6:00 p.m. and six continuous weeks during the summer during which time the Mother would have alternate weekends with the child. In addition, the parties would alternate major holidays. Finally, the court expressed concern over the attitude of the child's step-father regarding the abuse of the child and thereby restrained the Mother and the step-father from allowing the child to be around Evert Mardis. The court stated that a finding that the child has been in the presence of Evert Mardis was a sufficient circumstance for immediate termination of the Mother's custody.

A court's determination concerning custody, either initially or upon a petition for modification, is factually driven. *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). Trial courts, therefore, have wide discretion in awarding custody and appellate courts will not interfere with lower courts' decisions except upon a finding of abuse of discretion. *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). The law is clear that an appellate court is to review a custody decision de novo with a presumption of correctness of the findings of fact of the trial court. *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). Such a decision will not be reversed absent an error of law, unless the appellate court finds that the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d); *see Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984).

The law provides that a trial court's initial award of custody is "subject to such changes or modification as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1) (1996 & Supp. 1997). The court must determine if there has been "a material change in circumstances that is compelling enough to warrant the dramatic remedy of changed custody." *Id.* "'Changed circumstances' includes any material change of circumstances affecting the welfare of the child or children including new facts or changed conditions which could not be anticipated by the former decree." *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. App. 1993) (quoting *Hicks v. Hicks*, 176 S.W.2d 371 (Tenn. App. 1943)). Finally, this court has held that the burden is on the non-custodial parent to prove changed circumstances. *Blair v.*

*Badenhope*, 940 S.W.2d 575, 576 (Tenn. App. 1996). Once the court determines there has been a material change in the conditions, it "should consider the effect on the child of changing his or her surroundings." *Hall v. Hall*, No. 01-A01-9310-PB-00465, 1995 WL 316255 at *3 (Tenn. App. 1995). And finally, "if there has been a material change of circumstances and if both parties would be fit parents, the court should determine which parent would be comparatively more fit." *Id.*

At the close of the trial, the lower court articulated the appropriate legal standard for modifying custody. After reviewing the evidence for a "change of circumstances," the court determined that there had been such a change. At the time that the January 1994 agreed order was entered, the circumstances were not only that the Father was married, but that he was married to Judy Layne. As the testimony of Judy Layne, Ms. Layne's sister, the Father and the Mother all revealed, this particular marriage was of great significance to the child. Ms. Layne was her primary care giver for over three years. It was Ms. Layne who prepared the child each day for school. It was Ms. Layne who shopped with the child and took her to her appointments. Perhaps the greatest evidence of their relationship is that when the Father moved out, the child remained under Ms. Layne's care for almost an entire year. Moreover, the specific language of the January 1994 agreed order indicates that parties contemplated the child be under the care of Ms. Layne as a circumstance of the Father's custody. The order provided that "[t]he parties have agreed that the custody of the said minor child shall be placed with the Defendant Stacy Layne **and wife, Judy Layne**." (emphasis added). We conclude that a preponderance of the evidence supports the court's finding that the divorce of the Father from Ms. Layne was a material change in circumstance which was not anticipated by the custody order.

In addition, we find that the evidence does not preponderate against the lower court's decision to transfer custody to the Mother as the comparatively more fit custodian under the changed circumstances. At the time of trial, the Mother had been in a marriage for three years. Both she and her husband desired that the child live with them in their home where they were adding on a room for the child. Due to the Father's job, it appears that his wife of three weeks at the time of the trial, Ms. Deborah Lane, and not he, was the primary caregiver when the child was in his custody. While there was no evidence that the child was suffering great harm in the

6

home with her father and her new stepmother, it was within the court's discretion to modify custody such that the child's mother and not her new step-mother be her primary caretaker.

Lastly we address the Father's contention that the lower court erred in not granting him visitation which was more extended and frequent. The law is clear: in structuring visitation, the welfare and best interest of the child are the paramount considerations and that the rights, desires and interests of the parents are secondary. *Neely v. Neely*, 737 S.W.2d 539, 542 (Tenn. App. 1987). The courts do recognize that it is important for the parent-child relationship to be maintained between a child and the noncustodial parent. *Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993); *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. App. 1995). In the case at bar, we find that visitation as structured by the court below gives the Father substantial time with the child. *See Jahn v. Jahn*, 932 S.W.2d 939, 942 (Tenn. App. 1996). As stated, the court ordered that the Father should have visitation every other weekend and for six continuous weeks during the summer during which the Mother would have alternate weekend visitation with the child. In addition, the court's order provided that the parties would alternate major holidays.

We realize that this visitation plan is not as extensive as certain of the various arrangements between the parties in previous years many of which were joint custody arrangements. However, the very nature of single-parent custody is that the custodial parent is given the "primary control and responsibility for the upbringing of the parties' children." *Dodd v. Dodd*, 737 S.W.2d 286, 289 (Tenn. App. 1987) (commenting unfavorably on joint custody and noting that "[t]here needs to be one residence, one haven in all the storms of life, including those storms whipped up by the winds of divorce.") Along with the responsibility of the custodial parent comes that parent's "sole prerogative to make the significant decisions concerning the child's education, residence, religious training, and medical care." *Rust v. Rust*, 864 S.W.2d 52, 55 (Tenn. App. 1993). It follows that the non-custodial parent's rights and obligations arising from the parent-child relationship are diminished. Where, as in this case, the visitation structured by the trial court permits the maintenance of the parent-child relationship, there is no abuse of discretion on the part of the lower court. We

7

therefore uphold the lower court's ruling with regard to visitation.

In conclusion, we find that the evidence does not preponderate against the trial court's findings with regard to custody and visitation in this case. Thus, we affirm the decision of the lower court to place custody with the Mother. We also uphold the Father's visitation with the child as it was structured by the trial court. The costs of the appeal are taxed to the Father.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE