# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## SUSAN LYNN WHITE (COLBERT) v. CHARLES JEROME WHITE

**Direct Appeal from the Circuit Court for Davidson County**
**No. 86D-2633 Muriel Robinson, Judge**

———————————

**No. M1999-00087-COA-R3-CV - Decided April 26, 2000**

———————————

This case involves the legality of an order by which the trial court "permanently terminated" a mother's visitation rights with her minor son. The trial court dismissed the mother's petition for a reinstatement of visitation on the basis that it had permanently terminated her visitation rights several years earlier. On appeal, the mother argues that it was unlawful for the trial court to *permanently* terminate her visitation rights. We agree with the Mother and hold that the trial court's order must be reversed and this case remanded to the trial court for a hearing on the mother's petition to reinstate visitation.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded.**

CAIN, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S. and COTTRELL, J., joined.

Clark Lee Shaw, Nashville, Tennessee, for the appellant, Susan Lynn White.

Mary Frances Lyle, Nashville, Tennessee, for the appellee, Charles Jerome White.

## OPINION

### I. Facts

Susan Lynn Colbert ("the Mother") and Charles Jerome White ("the Father") are the parents of one child, Brent Colbert White, who was born March 12, 1986. The parties were divorced in 1987 at which time the Mother was awarded custody of Brent. Subsequently, the Father petitioned for a change of custody, and, by order filed September 26, 1995, the child was placed in the sole custody of the Father.

The September 1995 Order reflected that the Mother, though duly noticed, was not present

at the hearing and that the court's decision was based upon statements of counsel, testimony of the Father and numerous witnesses and the record as a whole. Significantly, in addition to modifying custody, the court concluded that "the visitation rights of [the Mother] are hereby permanently terminated." The order prohibited the Mother from visiting the child or making contact with the Father, his current wife, or the child. Finally, the order decreed that child support be deferred until further order for the reason that the Mother was allegedly mentally ill.

The instant proceedings began more than three years later when the Mother filed a petition to reinstate visitation on January 22, 1999. This petition alleged that the Mother had been hospitalized in November of 1995 at which time she came under the care of a psychiatrist who successfully treated her mental disorder. The petition asserted that since November 1995, the Mother had remained on medication and continued to progress in her recovery, both through medication and therapy. Finally, the petition to reinstate alleged that, at the present time, the symptoms of the Mother's mental illness have abated.

As evidence of her mental progress, the Mother asserted in her petition that she now has legal custody of her daughter, Lauren McGuffey, born in February 1988. She alleged that in the fall of 1995, she defeated a petition to terminate her parental rights with regard to this daughter. In addition, she claimed that the juvenile court had reviewed this custodial arrangement on May 28, 1997 and found that the daughter was continuing to do well in the Mother's custody. The petition to reinstate concluded with a statement that it is in her son Brent's best interest to have standard visitation with his Mother.

The Father moved to dismiss the Mother's petition to reinstate visitation, and a hearing was held. At the hearing, only the parties' attorneys spoke, both summarizing the history of the case. At the close of the February 1999 hearing, the court made the following statement from the bench:

> I'm going to grant this motion to dismiss. It was my intention that this woman never have any contact with this child again, and that's why I put the word permanent in that decree. So I understand your position, but you're going to have to get the Court of Appeals to tell me that permanent doesn't mean permanent, because to me that situation was so horrendous at that point in time. I intended permanently that this woman never have any contact with this child again in its life. So the order that says permanent, I meant permanent. So I state that for the record.

In its final order, the trial court did dismiss the Mother's petition to reinstate visitation holding as follows:

> Based on the facts and circumstances of this case, the Court in its order of September 26, 1995 permanently terminated the visitation rights of Susan Lynn Colbert [the Mother]. It was the intent of the Court to permanently terminate visitation, based upon good cause shown. That order was not appealed.

The court then taxed the costs to the Mother.

-2-

## II. Issue

The significant issue on appeal is whether the trial court's "permanent termination" of the Mother's visitation rights in its September 1995 Order was indeed permanent such that it effected a permanent termination of the Mother's parental rights. The trial court's holding is clear: its September 1995 termination was intended to be permanent. The Father urges us to affirm this holding arguing that a permanent termination of visitation rights is effectively a termination of parental rights. Since the Mother failed to appeal the termination of her rights within one year from the date of the September 1995 order, the termination is final. We disagree with the trial court's conclusion finding that it must be reversed.

First of all, by "permanently terminating" visitation rights, the trial court's September 1995 order litigates future matters which are left open by law. A non-custodial parent has the right to visitation "as will enable the child and the non-custodial parent to maintain a parent-child relationship unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health." Tenn. Code Ann. § 36-6-301 (Supp. 1999). Our supreme court has stated that "the right of visitation . . . may be limited, or eliminated, if there is definite evidence that to permit . . . the right would jeopardize the child, in either a physical or moral sense." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (*quoting Weaver v. Weaver*, 37 Tenn. App. 195, 202-03, 261 S.W.2d 145, 148 (1953)). However, the right to visitation may be reinstated upon a finding of a change of circumstances. *See Suttles*, 748 S.W.2d at 429.

In *Suttles*, the court held that "the combination of [the father's] incarceration, the crimes for which he is imprisoned, the age of the child, his history of violent behavior toward his son and [the mother], and his obvious need to deal with his violent temper make visitation inappropriate at this time." *Id.* Significantly, the court noted that the father may "petition the trial court to modify this order upon a demonstration of changed circumstances." *Id.; see also Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997) (stating that "intervening changes in a child's circumstances may require modifying an existing custody and visitation arrangement"); *McCasland v. McCasland*, No. 02A01-9408-GS-00185, 1995 WL 570384, at *2 (Tenn. Ct. App. 1995) (finding that a substantial change in circumstances justified a greater modification in the father's visitation rights than that made by the trial court); *Sherman v. Sherman*, No. 01A01-9304-CH-00188, 1994 WL 649148, at *3 (Tenn. Ct. App. 1994) (determining that significant changes in the circumstances for the parties had occurred such that a reexamination of the visitation arrangements must be made).

Furthermore, to affirm the trial court's final order interpreting the September 1995 Order as a permanent termination of visitation rights would infringe upon the Mother's constitutional rights. Our supreme court has held that "Tennessee's historically strong protection of parental rights and the reasoning of federal constitutional cases convince us that parental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution." *Hawk v. Hawk*, 855 S.W.2d 573, 579 (Tenn. 1993); *see also Broadwell by Broadwell v. Holmes*, 871 S.W.2d 471, 475 (Tenn. 1994). The right to visit one's child is, for a non-custodial parent, the paramount parental right. *See Neely v. Neely*, 737 S.W.2d 539, 542 (Tenn. Ct. App. 1987) ("The courts should not lightly and without good cause sever the non-custodial parent's right to the care and companionship

of a child.") (*citing Stubblefield v. State ex rel. Fjelstad*, 171 Tenn. 580, 587, 106 S.W.2d 558, 560 (1937)). As the Father acknowledges, a permanent termination of visitation is effectively a permanent termination of parental rights for the Mother.

"Because the decision to terminate parental rights involves fundamental constitutional rights," one seeking termination must establish "by 'clear and convincing evidence' the statutory grounds required to terminate the parents' parental rights." *In re M.W.A., Jr.,* 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998) (*quoting* Tenn. Code Ann. § 36-1-113(c)(1) (1996)). Specifically, Tennessee's termination statute provides as follows:

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c)(1) & (2) (Supp. 1999); *see also* Tenn. Code Ann. § 37-1-147 (1996) (granting the juvenile court jurisdiction to terminate parental rights upon the grounds and pursuant to the procedures of title 36, chapter 1, part 1). "This heightened standard of review serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." *M.W.A.,* 980 S.W.2d at 622.

In this case, the trial court's September 1995 Order "permanently terminated" the Mother's visitation rights upon a petition for a change of custody filed by the Father. The Mother had no reason to expect that the hearing upon this custody modification petition would result in a permanent loss of her parental rights. Indeed, she was not even present at this hearing. Moreover, the court failed to make both the requisite finding, by clear and convincing evidence, that any statutorily determined circumstances for termination were present and the requisite finding that termination of the Mother's rights was in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *see also M.W.A.,* 980 S.W.2d at 622 ("Parental rights can be terminated in only a limited number of statutorily defined circumstances and then, only if a court determines that termination is in the child's best interests."). We find that since the Mother's parental rights were not terminated under the termination proceedings of section 36-1-113(c) such that she did not receive the heightened protection afforded by the termination statute, a permanent termination of her visitation rights is a violation of her constitutional rights. Therefore, the trial court's final order interpreting the September 1995 order as a permanent termination of visitation rights must be reversed.

### III. Conclusion

The trial court's interpretation of its September 1995 Order as a permanent termination of the Mother's visitation rights is contrary to the law. First, it is in contravention of Tennessee law

which leaves the issue of visitation open and within the control of the court, and, second, it violates the Mother's constitutionally protected parental right. In light of our conclusion that the trial court's "permanent termination" of visitation rights cannot stand, we reverse the trial court's dismissal of the Mother's petition to reinstate visitation, and we remand this matter for a hearing on the Mother's petition. At the hearing on remand, the court must determine whether circumstances have changed such that visitation with the Mother is now in the child's best interest. The costs of this appeal should be taxed to the appellee, the Father.