IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 15, 2017 Session

## CHRISTEN NICOLE PANKRATZ v. DION PANKRATZ

**Appeal from the Chancery Court for Cheatham County**
No. 16305    Larry J. Wallace, Judge

_____

### No. M2017-00098-COA-R3-CV

_____

This case involves a post-divorce modification of a parenting plan.  The trial court found that there had been a material change in circumstances since the entry of the parties' existing parenting plan.  Mother appeals the trial court's modification of the parenting plan insofar as the trial court did not adopt, *in toto*, her proposed plan.  Father appeals the trial court's finding that a material change in circumstances occurred since entry of the parties' existing parenting plan but argues, in the alternative, that the trial court should be affirmed. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Brenda Rhoton Clark, Nashville, Tennessee, for the appellant, Christen Nicole Pankratz.

Irene R. Haude, Nashville, Tennessee, for the appellee, Dion Pankratz.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Christen Pankratz ("Mother," or "Appellant") and Dion Pankratz ("Father," or "Appellee") are the parents of one minor child, born June 2011. Concurrent with their divorce in January 2015, the trial court entered a parenting plan for the child.  The plan designated Mother as the primary residential parent but gave each parent equal parenting time.  The parenting plan also specified that Mother and Father would have joint decision-making in the areas of education, non-emergency health care, religion, and extracurricular activities.  Father has since married Kendra Pankratz ("Step-Mother").

On December 11, 2015, Mother filed a petition to modify the parenting plan by awarding her additional parenting time and major decision-making authority in all four areas specified in the parenting plan: education, non-emergency healthcare, religious upbringing, and extracurricular activities.

As grounds for her petition, Mother averred that the parties' conflicting social and religious views concerning the child's upbringing had led to ongoing disagreements, and it would be in the best interest of the child to be raised in a single environment. Mother, a practicing Christian, alleged that, since the parties' separation, Father had converted to Messianic Judaism[1] ("Father's Religion"). Following his conversion, Mother averred that Father had expressed his belief to her that her religion was a form of paganism and many of Mother's lifestyle decisions were sinful. Mother further alleged that it was her understanding that Father's religion prevents him from associating with non-believers.[2] Mother alleged that Father intended to alienate her from the child and that Father regularly made disparaging remarks to the child about Mother, her religion, and her lifestyle choices. Mother believes Father's behavior is causing the child to experience distress, confusion, and anxiety.

On January 28, 2016, Father answered Mother's petition and filed a counter-petition to modify the parties' parenting plan. The cross-petitions were heard by the Chancery Court for Cheatham County on November 3, 2016. Both parties presented evidence that they were experiencing ongoing conflict with the other party due to their opposing views. As part of her proof at trial, Mother proffered a recorded conversation between her and Father illustrating the nature of the parties' conflict:

> Father [to Mother]: **When you say you respect our beliefs then you participate in things with (the child) like carving a pumpkin, like putting on costumes, any of the stuff that goes on in this place, actually is a stumbling block for her and it breaks covenant**. . . . **What is going to happen, and I am just forewarning you, for (the child's) life, there is not going to be both of us, if she decides to walk in covenant in**

---

[1] Messianic Judaism combines elements of Christianity with elements of Judaism and Jewish tradition. *See* Yaakov Ariel, *Judaism and Christianity Unite!: The Unique Culture of Messianic Judaism*, *in* 1 HISTORY AND CONTROVERSIES: INTRODUCTION TO NEW AND ALTERNATIVE RELIGIONS IN AMERICA 191–217 (Eugene V. Gallagher & W. Michael Ashcraft, eds., 2006). While particular teachings vary between congregations, generally, Messianic Jews believe in the validity of the Old Testament and the New Testament, and in particular contrast to historic Jewish theology, that Jesus is the Messiah. *Id*.

[2] Father testified that his parents, also followers of Messianic Judaism, which he referred to as "the Hebrew Faith," are estranged from the other members of his family who do not follow their faith.

**obedience, and I hope that she does for her life's sake, you will become estranged to her, she will not look at you as a mother[.]**

. . .

Father [to Mother] . . . **She's trying hard to make the two environments work and they don't—they are in opposition to each other. And whether you like it or not, our life is in contrast to your life.**

Father testified that the aforementioned conversation clearly voiced his opinions.

Both parties presented evidence illustrating their ongoing disagreements relating to the child's non-emergency healthcare, education, religion, and extra-curricular activities. For example, Father does not believe in vaccinations, while Mother is a registered nurse and believes vaccinations are an important component of healthcare. Father desires to homeschool the child, while Mother has enrolled the child in public school. Father believes Christian and secular holidays are sinful, Mother celebrates both.

On December 7, 2016, the trial court entered its order, which incorporated its ruling from the bench. In its order, the trial court found that a material change of circumstances had occurred since the parties' divorce based on increasing conflict between the parents. After evaluating the statutory factors in light of the evidence, the trial court found it was in the child's best interest to modify the existing parenting plan by: (1) effectively vesting educational and non-emergency healthcare decision-making authority with Mother; and (2) awarding Mother additional parenting time on religious and secular holidays. The trial court also emphasized that the parenting plan prohibits both parties from making disparaging remarks about the other parent or their lifestyle choices in the presence of the child.

### ISSUES PRESENTED

The parties present the following issues for review, which we restate and reorder as follows:

I. Whether the trial court erred in finding a material change in circumstances.

II. Whether the trial court erred in finding that modifying the parties' existing parenting plan is in the child's best interest.

III. Whether the trial court erred "in failing to make any changes to the parenting plan to address the alienation by Father and conflict between the parties."

IV. Whether either Mother or Father should be awarded their attorney's fees on appeal.

## STANDARD OF REVIEW

In an appeal from a bench trial, we review findings of fact "*de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. Civ. P. 13(d). However, we review questions of law *de novo* with no presumption of correctness. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

"A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Id.* at 692–93 (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 1997)). Accordingly, we must presume that a trial court's findings on these matters are correct, and we may not overturn them, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister*, 414 S.W.3d at 692.

Due to the unique circumstances surrounding every child, decisions regarding parenting arrangements are especially fact-driven and require the trial court to consider numerous statutory factors. *See Armbrister*, 414 S.W.3d at 693 (citing *Holloway v. Bradley*, 230 S.W.2d 1003, 1006 (Tenn. 1950)). Because trial judges have the opportunity to observe witnesses and make credibility determinations, they are better positioned to evaluate the facts, and determining the details of a parenting plan is thus "peculiarly within the broad discretion of the trial judge." *See id.* at 693 (citation omitted). "It is not the function of appellate courts to tweak [a parenting plan] in the hopes of achieving a more reasonable result than the trial court." *Id.* at 693 (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)).

Accordingly, we may only reverse a trial court's decision regarding the details of a parenting plan if we determine that the trial court abused its discretion in fashioning the plan. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id. at* 693 (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)). A trial court abuses its discretion in establishing a parenting plan "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of

the correct legal standards to the evidence found in the record." *See Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge*, 42 S.W.3d at 88).

## DISCUSSION

Cases involving custody and visitation arrangements are among the most important decisions that courts make. *See Krupp v. Cunningham-Grogan*, No. M2005-01098-COA-R3-CV, 2016 WL 2505037, at *6 (Tenn. Ct. App. Aug. 29, 2006) (citation omitted). The chief purpose when fashioning a permanent parenting plan is always "to promote the child's welfare by creating an environment that promotes a nurturing relationship with both parents." *Id.* at *6 (citing *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996).

In order to modify an existing parenting plan, the trial court must follow a two-step process. First, the trial court must determine whether there has been a material change in circumstances since the entry of the existing parenting plan. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B); *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *2 (Tenn. Ct. App. Dec. 27, 2012). Finally, pursuant to the modification procedures described in Tennessee Code Annotated Section 36-6-405(a), the court must apply the statutorily enumerated factors, so as to determine whether modification of the parenting plan is in the best interest of the minor child. *Armbrister*, 414 S.W.3d at 698.

## I. MATERIAL CHANGE IN CIRCUMSTANCES

Father initially challenges the trial court's determination that a material change in circumstances occurred since the entry of the parties' original parenting plan. "Existing parenting orders are considered *res judicata* on the facts as they existed at the time the most recent order was entered." *See Stricklin v. Stricklin*, 490 S.W.3d 8, 16 (Tenn. Ct. App. 2015). Therefore, only after making the threshold determination that a material change in circumstances has occurred, may the trial court turn to consider whether modification of an existing parenting plan is in the child's best interest. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C); *e.g., Broadrick v. Broadrick*, No. M2013-02628-COA-R3-CV, 2015 WL 1947186 (Tenn. Ct. App. Apr. 29, 2015).

According to Father, "for a change of circumstances to exist, the change must have occurred after the last order, must not have been reasonably anticipated as of the time of the last order, and must impact the child in a meaningful way." Father argues that Mother was aware of Father's conversion to Father's Religion at the time of their

separation, and the evidence supporting Mother's contention that Father desires to alienate the child from her is speculative. We find Father's argument unavailing. [3]

Concerning a material change in circumstances, Tennessee Code Annotated Section 36-6-101(a)(2)(C) states:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change in circumstance affecting the child's best interest. A material change in circumstance does not require a showing of substantial risk of harm to the child. A material change of circumstances for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interests of the child.

(emphasis added). In *Armbrister*, the Tennessee Supreme Court held "that facts or changed conditions **which reasonably could have been anticipated** when the initial residential parenting schedule was adopted may support a finding of a material change in circumstances, so long as the party seeking modification has proven by a preponderance of the evidence 'a material change of circumstance affecting the child's best interest.'" *Armbrister*, 414 S.W.3d at 704 (quoting Tenn. Code Ann. § 36-6-101(a)(2)(C)) (emphasis added). The Tennessee Supreme Court has also recognized that Tennessee Code Annotated Section 36-6-101(a)(2)(C) sets what is widely known among domestic law practitioners as a very low threshold for establishing a material change in circumstances. *See id.* at 703.

Based upon the intense level of ongoing conflict between the parties, the trial court found that Mother had established, by a preponderance of the evidence, that a material

---

[3] Father's brief relies on an outdated standard. To clarify, the 2004 amendment of the child custody statute "resulted in Tennessee having a different set of criteria for determining whether a material change in circumstances exists for modification of a 'residential parenting schedule' as compared to the standard that applies for modification of 'custody'—a statutory term the Court of Appeals has equated to the designation of a 'primary residential parent.' *Armbrister*, 414 S.W.3d 685, 703 (internal quotations and citations omitted). Because Mother was already designated as the primary residential parent in this case, modification of a parenting plan under section 36-6-101(a)(2)(C) is at issue, and section 36-6-101(a)(2)(C) "sets a very low threshold for establishing a material change in circumstances." *Id*. (internal quotations and citations omitted).

change in circumstances had occurred since entry of the parties' existing parenting plan. Specifically, the trial court found that, "the basis to modify the plan [is] the overall conflict that's resulted between the two parents since the divorce and as it relates to the parenting, the child in school, and the medical needs." Both parties testified concerning their opposing views concerning the child's upbringing and their ongoing disagreements. We cannot conclude that the evidence preponderates against the trial court's finding that a material change in circumstance occurred since entry of the parties' original parenting plan.

## II. BEST INTEREST OF THE CHILD

Our conclusion that the proof supports the trial court's finding of a material change in circumstances answers only the threshold question in this modification proceeding. *Armbrister*, 414 S.W.3d at 705. It does not predetermine the outcome of the case. *Id*. The second step of the court's analysis entails a determination of the child's best interests, utilizing the statutorily mandated factors. *Id*. "In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." Tenn. Code Ann. § 36-6-401(a). When fashioning a parenting plan, trial courts must allocate parental decision-making authority, described statutorily as "parenting responsibilities." *See* Tenn. Code Ann. § 36-6-402(2) ("'Parenting responsibilities' means those aspects of the parent-child relationship in which the parent makes decisions and performs duties necessary for the care and growth of the child.")[4] A trial court has broad discretion to limit or modify

---

[4] In relevant portion, Tennessee Code Annotated Section 36-6-402(2), also states as follows:

"Parenting responsibilities," the establishment of which is the objective of a permanent parenting plan, include:
(A) Providing for the child's emotional care and stability, including maintaining a loving, stable, consistent, and nurturing relationship with the child and supervising the child to encourage and protect emotional, intellectual, moral and spiritual development;
(B) Providing for the child's physical care, including attending to the daily needs of the child, such as feeding, clothing, physical care, and grooming, supervision, health care, and day care, and engaging in other activities that are appropriate to the developmental level of the child and that are within the social and economic circumstances of the particular family;
(C) Providing encouragement and protection of the child's intellectual and moral development, including attending to adequate education for the child, including remedial or other education essential to the best interests of the child;
(D) Assisting the child in developing and maintaining appropriate interpersonal relationships;
(E) Exercising appropriate judgment regarding the child's welfare, consistent with the child's developmental level and the family's social and

provisions of an existing parenting plan, including the allocation of parental responsibilities, if the court finds that modification is in the child's best interest. *See* Tenn. Code Ann. § 36-6-406(d)(8).[5] A permanent parenting plan must also: "(1) [p]rovide for the child's changing needs as the child grows and matures, in a way that minimizes the need for further modification of the parenting plan; (2) establish the authority and responsibilities of each parent with respect to the child, consistent with the criteria in [the statute]; and (3) minimize the child's exposure to harmful potential conflict." Tenn. Code Ann. § 36-6-404(a). We now turn to evaluate the trial court's modifications in light of the evidence in the record.

Both parties presented evidence illustrating their ongoing disagreements related to the child's upbringing. For example, the parties have opposing views regarding their child's healthcare. Mother is a registered nurse. Father does not believe in man-made pharmaceuticals and testified that he is against vaccinating the child. Mother, however, has vaccinated the child because Mother believes vaccinations are important to the child's overall health, and the child's school requires that the child receive vaccinations. Father testified that he has told the child that vaccinations are "not good" for her and that they "make her stupid."[6] The child's medical records indicate, "patient states in her own words that dad tells her vaccines make [her] sick and make me not smart." Mother testified that she does not want the child to fear medical treatment.

The parties also disagree concerning the potential benefits of counseling for the child. Mother testified that she believes counseling could be beneficial to the child, but that Father has refused to give his consent. Mother proffered an e-mail from Father in support of her contentions, in which Father states:

> You do NOT have my consent to start [the child] in "counseling therapy." …. I do Not give you consent for starting [the child] in "counseling therapy."…. As Parents … it is our responsibility … to facilitate a healthy emotional state not a therapist.

---

economic circumstances; and
  (F) Providing any financial security and support of the child in addition
to child support obligations;

[5] Tenn. Code Ann. § 36-6-406(d)(8) states, "[a] parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing . . . [s]uch other factors or conduct [that] the court expressly finds adverse to best interests of the child."

[6] Father sent Mother a text message on November 21, 2015, stating, "[h]eads up [the child] is sick again. Thanks to the poison injected in her. I absolutely despise your idea of medicine."

The parties also disagree concerning the child's education. Father desires to homeschool the child while Mother has enrolled the child in public school. Nonetheless, both parents testified that the child is doing well in public school.

The parties also celebrate different holidays. Father testified that he believes Mother's religious and secular holidays are sinful "stumbling blocks." Mother, however, celebrates her religious and secular holidays with the child. Father testified that he believes that participation in Halloween, Christmas, Easter, birthdays, Mother's Day, Father's Day, and Thanksgiving is sinful. He testified that he prays over the child when she returns from participating in activities he views as stumbling blocks. Mother expressed concern that Father's behavior is leading the child to believe that participating in Mother's religious and secular holidays is sinful. However, Father testified that he allowed the child to stay with the Mother on her religious and secular holidays in the past, and he acknowledged that Mother can celebrate whatever holidays she chooses.

The trial court considered the evidence in light of the statutory factors and concluded that modification of the existing parenting plan was in the child's best interest. While the trial court generally preserved the provisions of the original parenting plan, it also recognized that the allocation of parenting responsibilities and parenting time on religious and secular holidays was resulting in conflict between the parties and attempted to fashion a plan that would mitigate future conflict.

Based upon the record and the totality of the circumstances, we cannot conclude that the evidence preponderates against the trial court's best-interest finding. Nor may we conclude that the trial court abused its discretion in fashioning the modifications it made to the parenting plan.

### III. FAILURE OF THE COURT TO MODIFY THE PARENTING PLAN TO ADDRESS THE ALIENATION BY FATHER AND CONFLICT BETWEEN THE PARTIES

Mother argues on appeal that the trial court erred in failing to adopt her proposed permanent parenting plan, *in toto*, and by allowing Father to continue to expose the child to his religion. Mother testified that the child experiences stomach aches before returning to Father's house, and Mother believes Father's practice of praying over the child is teaching the child that Mother's lifestyle is morally corrupt. Both parties testified that they felt the child was conflicted because of her parents' opposing religious and social views. Having acknowledged the parents' concerns regarding the child's exposure to their conflicting religions, the trial court nevertheless concluded that there was not sufficient proof in the record to justify the court's imposition of a parenting plan that would effectively advance Mother's religion while inhibiting Father's religion.

Our courts have consistently held that parents have a fundamental right to practice their religion, as well as an important interest in their child's religious upbringing. *See Neely v. Neely*, 737 S.W.2d 539, 543 (Tenn. Ct. App. 1987). Out of respect for these interests, courts strive to maintain strict neutrality in cases involving religious disputes between divorced parents. *Id* "In fact, the law tolerates and even encourages, up to a point, the child's exposure to the religious influences of both parents even if they are divided in their faiths." *Id.* (citing *Felton v. Felton*, 383 Mass. 232, 418 N.E.2d 606, 607 (1981)).

However, the welfare and best interest of the child are always the court's paramount concerns, and a court may interfere when there is a *clear and affirmative* showing that one parent's religious beliefs and practices threaten the health and well-being of the child. *Id.*; *Luke v. Luke*, 651 S.W.2d 219 (Tenn. 1983).[7] In *Neely*, this Court confronted similar facts when a father desired to take his child to a Pentecostal church, while the parents' custody agreement[8] mandated that the child would exclusively attend the mother's Baptist church. *Neely*, 737 S.W.2d at 543. Based solely upon the mother's testimony that she feared that exposure to the father's religion could confuse and harm the child, the trial court refused the father's request to amend the agreement to permit the father to take the child to his church. *Id.* However, we reversed the decision of the trial court, reasoning that the mother's unsubstantiated claims that exposure to both religions would have harmful effects on the child did not justify the trial court's deviation from strict neutrality. *Id.* We stated:

> The harm to a child from being exposed to its parents' conflicting religious beliefs cannot be simply assumed or surmised. It must be demonstrated in detail. Thus, a custodial parent's assertions that the child will be harmed or might be confused do not provide a court with a sufficient basis to interfere with the non-custodial parent's interests in exposing a child to his or her religious beliefs.

---

[7] Tennessee Code Annotated Section 36-6-406(d) states, *inter alia*, "[a] parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing: . . . (5) the abusive use of conflict by the parent that creates the danger of damage to the child's psychological development; . . . (8) [s]uch other factors or conduct as the court expressly finds adverse to the best interests of the child."

[8] *Neely* was decided before the enactment of Tennessee Code Annotated Section 36-6-401 to 36-6-414, effective January 1, 2001, which mandates that any final decree awarding or modifying custody must include a permanent parenting plan. *See* W. Walton Garrett, 19A Tenn. Prac. Tenn. Divorce, Alimony & Child Custody § 25:1 (2nd ed. database updated Dec. 2015). Accordingly, the parties' parenting agreement in *Neely* is referred to as the "custody agreement."

*Id*. (citation omitted).[9]

The trial court in this case, as we held in *Neely*, concluded that Mother's evidence was insufficient to prove that the child's exposure to Father's religion was harmful. Again, we note that we may only overturn the trial court's discretionary decision in modifying the parties' parenting plan for an abuse of discretion. Based on our review of the record in this case, we conclude that the trial court applied the proper legal standards and fashioned a parenting plan within the spectrum of proper reasonable results. Accordingly, we affirm its decision.

## IV. ATTORNEY'S FEES

Both parents seek an award of attorneys' fees on appeal. However, Mother waived her claim for attorneys' fees because she did not raise the issue in her principal brief, and "it is not the office of a reply brief to raise issues on appeal." *Nw. Tenn. Motorsports, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 819 (Tenn. Ct. App. 2011). Regarding Father's claim to attorneys' fees, appellate courts have discretion to award a prevailing party fees incurred on appeal. Tenn. Code Ann. § 36-5-103(c); *Broadrick v. Broadrick*, 2015 WL 1947186, at *8. "We consider the following factors in our decision to award fees: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors." *See Broadrick*, 2015 WL 1947186, at *8 (citing *Hill v. Hill*, No. M2006-02753-COA-R3_CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). In view of these factors and the totality of the circumstances, including our ultimate decision in this case, we respectfully decline to award Father his attorneys' fees incurred on appeal.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court modifying the parties' parenting plan. Additionally, we deny both parties' requests for attorneys' fees incurred on appeal. Costs of this appeal are taxed one-half to Appellant Christen Nicole

---

[9] In *Neely*, the court noted that, "courts have based findings that the parents' conflicting religious beliefs are harming the child upon the testimony of psychologists, ministers, and rabbis." *Neely*, 737 S.W.2d 543 n.2 (citing *Funk v. Ossman*, 150 Ariz. 578, 724 P.2d 1247 (Ct. App. 1986); *Andros v. Andros*, 396 N.W.2d 917 (Minn. Ct. App. 1986); *Bentley v. Bentley*, 86 A.D.2d 926, 448 N.Y.S.2d 559 (1982)); *see also Baker v. Baker*, No. 03A01-9704-GS-001115, 1997 WL 731939, *6 (Tenn. Ct. App. Nov. 25, 1997) (holding that a mother had presented sufficient evidence to justify the court's interference with the father's religious practices when a psychologist, a licensed clinical social worker, family members, friends, and clergy testified that the father's religious practices were harming and confusing the children).

Pankratz and her surety, and one-half to Appellee Dion Pankratz, for which execution may issue, if necessary.

_____

ARNOLD B. GOLDIN, JUDGE