IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 26, 2002

## TONY MAKOKA v. WENDY K. MAKOKA-MHLANGA

**Appeal from the Circuit Court for Davidson County**
**No. 94D-1173      Muriel Robinson, Judge**

---

**No. M2001-00363-COA-R3-CV - Filed September 12, 2002**

---

A prisoner filed a petition to enforce an agreed order that granted him visitation rights with his minor daughter. The child's mother asked the trial court to dissolve the agreed order. The court found that it was not in the best interests of the child to compel her to visit her father in prison, dissolved the agreed order, and enjoined the father from engaging in activities that amounted to harassment of the mother. We affirm the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Tony Makoka, Harare, Zimbabwe, Pro Se.

Roger K. Smith, Nashville, Tennessee, for the appellee, Wendy K. Makoka-Mhlanga.

**OPINION**

### I. MARRIAGE, CRIME, DIVORCE

Tony Alois Makoka, a native of Zimbabwe, married Wendy Kanganwi Mhlanga in May of 1985. The couple resided in Nashville, where they both went to school. Mr. Makoka earned a degree in Chemistry and Chemical Engineering, and his wife became a registered nurse. The accounts of their friends and fellow-countrymen indicate that the marriage was a happy one, and perhaps it should have become even happier after the birth of their daughter, Tatenda Margaret-Rose Makoka, on July 11, 1990. Unfortunately, it was not to be.

In the year his daughter was born, Mr. Makoka began an extramarital affair with a woman at work. The woman tried to break off the relationship. Mr. Makoka became enraged and jealous, and threatened to kill her. When he encountered the woman and her new boyfriend in a vehicle, he

followed them, attempted to run them off the road, and ultimately shot them both with a .357 revolver. They both survived, but the woman suffered severe injuries.

Mr. Makoka was indicted on two counts of attempted murder. His wife testified at trial that he was a loving husband and father, and that the acts he was accused of were completely out of character for him. Other members of the small Zimbabwean community in Nashville and of Mr. Makoka's church testified in a similar vein on his behalf. Mr. Makoka was convicted on both counts, and received an effective prison sentence of 25 years. The Court of Criminal Appeals later reduced his sentence to 20 years, in light of mitigating factors that it believed were not given sufficient weight by the trial court. *See State v. Makoka*, 885 S.W.2d 366 (Tenn. Crim. App. 1994).

Mr. Makoka's wife continued to be supportive of him. She brought Tatenda to visit her father in prison on several occasions, and also allowed the child to visit in the company of her uncle, Alex Mhlanga. But the circumstances of Mr. Makoka's crimes, and their effect on the family unit apparently began to weigh on her mind.

The mother filed a petition for divorce on the grounds of conviction of felony, pursuant to Tenn. Code. Ann. § 36-4-101(6). The trial court granted the divorce on June 16, 1995. Full legal and physical custody of Tatenda was granted to the mother, with the question of visitation reserved, pending application by the father. Ms. Makoka's maiden name was restored to her, and in this opinion, we will henceforth refer to her as Ms. Mhlanga.

## II. A PETITION FOR VISITATION

Tony Makoka subsequently filed a petition for visitation rights, together with an affidavit of indigency and a motion for appointment of counsel. He asked that his daughter be allowed to visit him in prison two weekends a month, that he be allowed to talk to her on the phone during the week at his own expense, and that the two be allowed to correspond by United States Mail. Ms. Mhlanga asked the court to dismiss the petition, contending that it would not be in the best interest of a five-year-old child to be exposed to a prison environment.

During the ensuing months, Mr. Makoka filed an unceasing barrage of pleadings and motions which he deemed necessary to obtain his rights. These included a petition for pendente lite visitation, a petition for appointment of a guardian ad litem for Tatenda, and a petition for writ of habeas corpus ad testificandum so Mr. Makoka could appear in person at the visitation hearing. There were also numerous motions objecting to the taking of his deposition, a renewed motion for appointment of counsel, and a request that an audiotape be made of the visitation hearing, as well as many motions for default, when Ms. Mhlanga failed to respond to his other motions in a timely way.

The trial court denied virtually all these petitions and motions. The court did grant the petition for appointment of a guardian ad litem for Tatenda, but only on the condition that Mr. Makoka deposit $500 with the court to pay the guardian's fee. Mr. Makoka objected to the fee

requirement, and to the court's choice of a guardian ad litem, but the court denied his motion to have the state pay the fee, so no appointment was made.

On August 23, 1996, the trial court filed an order dismissing Mr. Makoka's petition for visitation rights. The court stated that it found visitation not to be in the best interest of the child, and recited that it had relied upon the deposition of the father, the sworn testimony of the mother, the arguments of the mother's counsel, and the entire record of the case to reach its conclusion.

### III. THE PARTIES REACH AGREEMENT

Mr. Makoka filed a notice of appeal of the trial court's order, together with a motion to proceed on appeal as a poor person, a motion for transcription of evidence at state expense, and a statement of fifteen issues to be presented for review. Ms. Mhlanga's attorney responded, perhaps inadvisedly, with a motion to strike the appeal on numerous grounds. This led to a further flurry of motions from Mr. Makoka, and finally, to an order of the trial court, filed October 28, 1997, dismissing all motions and orders subsequent to August 23 as "incomprehensible and frivolous."

Despite the trial court's order dismissing his petition for visitation, Mr. Makoka filed a pleading styled as a Petition for Parental Rights on November 7, 1997, the contents of which were virtually identical to the petition dismissed by the trial court. A memorandum of law accompanied the new petition. Meanwhile, Ms. Mhlanga's attorney passed away, and so she did not respond to the petition. Mr. Makoka then filed a motion for default judgment, followed by a set of written interrogatories directed to himself, which he both propounded and answered. In March of 1998, Mr. Makoka obtained pro bono counsel. On March 31, the court granted the motion for default.

Ms. Mhlanga found a new attorney, who filed a motion to set aside the default. The trial court agreed and scheduled a hearing on the petition. Astonishingly, the parties and their attorneys managed to reach agreement, and the trial court signed their agreed order on November 2, 1998. The new order included provisions for the father to call the child twice a week, and send her two letters a month. The father was also granted visitation once a month, with the child to be transported to the prison by members of the Belmont United Methodist Church.

The agreement worked for a while. Mr. Makoka enjoyed visitation with his daughter in November and December of 1998, and in January, February and April of 1999. But visitation stopped after that date. In a letter to her former husband, Ms. Mhlanga explained that Tatenda had not wanted to visit in March or April, but that she had forced the child to go, that the little girl was becoming increasingly hysterical over upcoming visits, and that although she would continue to encourage visitation, she would not force her again.

### IV. THE AGREED ORDER IS DISSOLVED

On January 10, 2000, Mr. Makoka filed a pro se petition for contempt against Ms. Mhlanga. He alleged numerous violations of the agreed order, including the lack of visitation, problems with

telephone privileges, and derogatory remarks allegedly made about him. The petition also alleged that Tatenda had been exposed to improper sexual conduct by her mother and was in danger of being abused. The source of Mr. Makoka's anxieties was apparently an anonymous letter which he filed with the court, laced with profanities and including scurrilous accusations of a sexual nature against Ms. Mhlanga. The letter contained no details to confirm any of the allegations, or to indicate that the writer had any actual knowledge of the mother's household. To a dispassionate observer, the letter would appear to be a cruel practical joke, perhaps written by another inmate, but Mr. Makoka took it seriously.

Ms. Mhlanga filed a response and counter-claim to the petition for contempt. She denied that she was guilty of any impropriety, and stated that Mr. Makoka had twice telephoned the Department of Children's Services (DCS) with allegations of child abuse which the Department found to be groundless, and that he had also filed two false reports with the Metro Police Department based on the same allegations. While these reports were likewise found to be groundless, she claimed that the investigations resulting from them were very disruptive and upsetting to both mother and daughter. She also claimed that Mr. Makoka used his telephone privileges to verbally abuse her.

Ms. Mhlanga asked for a restraining order to prevent Mr. Makoka from threatening, harassing or intimidating her in any way. She also asked to court to dissolve the agreed order of November 2, 1998. In response, Mr. Makoka denied all of Ms. Mhlanga's allegations, and filed his own petition for a restraining order, a motion for sanctions against Ms. Mhlanga for violating the agreed order, and a virtual blizzard of additional motions, which we do not believe necessary to set out in detail.

The hearing on the petition for contempt and the counterclaim was conducted on July 20, 2000. The trial court noted that Ms. Mhlanga testified, but that Mr. Makoka failed to avail himself of his right to give testimony by deposition or interrogatory, that he had filed voluminous, frivolous pleadings with the Court, that defending against these pleadings was creating a tremendous burden for Ms. Mhlanga, and that it was in the best interest of Tatenda to terminate the visitation schedule. Mr. Makoka was enjoined from contacting the child's school, making further telephone calls to his former wife's household, contacting DCS or the police department to make reports or complaints about the mother and child, and filing any further pleadings in court unless represented by counsel.

The order also stated that Tatenda could write to her father if she wished, but was under no obligation to do so, and that Ms. Mhlanga should continue to send him progress reports about the child's schoolwork and to inform him as to any major illnesses or hospitalizations that occurred. Mr. Makoka filed a notice of appeal of the court's order, followed by yet another series of motions, petitions and other pleadings.

## V. THE STANDARD OF REVIEW

We must note at the outset that Mr. Makoka's circumstances have changed since he filed his notice of appeal. He was apparently paroled by the Department of Correction, and subsequently

taken into the custody of the United States Immigration and Naturalization Service. At the time his brief was filed, he was being held in the INS detention facility in Oakdale, Louisiana to face deportation proceedings.[1] Thus, even if we found the trial court to be in error, we could not reinstate the agreed order as it was, but would have to fashion a new visitation order to meet the changed conditions. We do not believe, however, that the trial court erred.

In deciding child custody and visitation cases, our courts have ruled that the welfare and best interests of the children must be the primary considerations, while the rights, desires, and interests of the parents must take a secondary role. *Whitaker v. Whitaker* 957 S.W.2d 834 (Tenn. Ct. App. 1997); *Neely v. Neely*, 737 S.W.2d 539 (Tenn. Ct. App.1987). The trial court in this case found that it was in the best interest of the child to terminate the visitation schedule previously agreed to by the parties. Findings of fact by the trial court are presumed to be correct unless the evidence preponderates otherwise. Rule 13(d), Tenn. R. App. P.

Ms. Mhlanga testified at trial that the little girl's last visit with her father was traumatic for her, that she cried when she was told that she needed to go, continued to cry when she came back, and had nightmares after that. Mr. Makoka argues on appeal that the mother was lying, that Tatenda was always playful and cheerful when she visited him, and that this could have been confirmed by Dr. Hazviperi Chinoda, who accompanied Tatenda for several of her visits. He claims that Dr. Chinoda was prepared to so testify, but that he was unable to appear at the hearing because of changes in the court's schedule. Perhaps an affidavit by Dr. Chinoda would have been helpful in this regard, but no such affidavit appears in the record. Mr. Makoka claims that he tried to file the affidavits of certain unnamed witnesses in the trial court, but that these were not accepted for filing.

We are aware that a prisoner seeking to maintain a relationship with his child stands at a distinct disadvantage with our court system when the custodial parent is opposed to such a relationship. But there is evidence in the record that Ms. Mhlanga gave Mr. Makoka substantial cooperation on visitation and other matters, at least until his unceasing legal activities wore down her good will.[2]

When a prisoner subjects a custodial parent to an a unceasing blizzard of motions and pleadings which are filed at taxpayer expense, almost all of which require the filing of a response, it imposes a serious financial and emotional burden on the child's custodian, and as a consequence upon the child herself. Mr. Makoka states in his pleadings numerous times that he loves Tatenda, and we have no reason not to believe him. He also states that "petitioner is simply seeking to do what is best for his daughter," but his desperate attempts to assert his rights have obviously not helped her.

---

[1] The most recent communication this court has received from Mr. Makoka indicates a return address in Harare, Zimbabwe.

[2] The technical record in this case is 445 pages long. It contains 49 separate motions, 40 of which were filed by the father. He also filed nine petitions, as well as fifteen documents which he labeled as objections, five as responses and three as replies.

Mr. Makoka also argues that the trial court's decision contradicts this court's opinion in the case of *Helson v. Cyrus*, 989 S.W.2d 704 (Tenn. Ct. App. 1998). In that case, we held among other things that the preference of a nine-year-old child cannot be the only factor to consider in deciding visitation privileges. But the situation before us is significantly different. Mr. Helson's son did not have to enter the gates of a prison in order to visit his father. Mr. Makoka has argued that family visitation in prison can be a very positive experience, and he has explained his own role as President of the Parents in Prison group. But we do not believe that any of this erases the negative impressions that a visit to a penal institution can in some instances create within the mind of a sensitive and intelligent child. We have thoroughly reviewed the record of this case, and we do not believe the evidence preponderates against the finding of the trial court.

## VI.

The order of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Tony Makoka.

_____

BEN H. CANTRELL, PRESIDING JUDGE, M.S.